Owen S. Jones, Appellee, *vs.* The Sanitary District of
Chicago, Appellant.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. Appeals and errors—*when a freehold is involved in action
on the case.* In an action by a land owner against a sanitary dis-
trict for damages to the land from overflow, if the defendant by
its plea denies the plaintiff's allegation of ownership and the ques-
tion of ownership is proved and determined a freehold is involved,
notwithstanding the defendant, on appeal, concedes the question of
title and does not desire to further contest that point.

2. Damages—*when all damages from permanent structure can
not be recovered in one suit.* Where the continuance and opera-
tion of a permanent structure is not necessarily injurious to land
but may or may not be so, according to the manner of its oper-
ation and the action of the forces of nature, only the injury sus-
tained before beginning the suit can be compensated in that suit.

3. Same—*permanency of the injury, and not the permanency of
the cause, is the test—limitations.* It is the permanency of the in-
jury, and not merely the permanency of the structure causing the
injury, which is the test in determining whether damages for all
time to come may be recovered in one action; and it is the injury
which is the cause of action, and the Statute of Limitations does
not begin to run until the cause of action accrues.

4. Same—*when injury is not necessarily of a permanent char-
acter.* Where a declaration charges that since the construction
and operation of the channel of a sanitary district the lands of the
plaintiff have been subject to more and greater overflow than be-
fore, and that such overflow is intermittent and recurrent, the in-
jury cannot be said to be of such a permanent character as requires
the plaintiff to recover all damages in one suit, and as fixes the
time the channel was opened as the time when the Statute of
Limitations began to run. (*Suehr* v. *Sanitary District,* 242 Ill.
496, distinguished.)

5. Same—*measure of damages in case of permanent injury to
realty.* In case of a permanent injury to realty the measure of
damages is the difference between the value of the land before the
injury and its value afterward; but such is not the rule where the
injury is not permanent, and in such case the measure of damages
is the actual loss sustained during the continuance of the injury.

6. Same—*when rule applicable to shade and ornamental trees
does not apply.* The rule that where fruit or ornamental trees are
destroyed by the flooding of lands the measure of damages is the
diminished value of the land does not apply where the trees de-

stroyed are ordinary forest trees having a value for lumber, which can be readily ascertained and proven.

7. SAME—*when plaintiff may prove value of timber. destroyed and yearly value of pasture lands.* In an action against a sanitary district for damages to lands of the plaintiff alleged to be flooded intermittently and recurrently, the plaintiff may prove the value of the timber destroyed and the value, per acre, of the pasture lands for each of the five years during the continuance of the injury and preceding the commencement of the suit.

8. SANITARY DISTRICTS—*when a sanitary district is liable for damage from overflow.* If, by reason of the flow of waters from a sanitary district channel into a connecting river, lands are overflowed and injured the district is liable to the owner of such lands, irrespective of whether the district has been guilty of any negligent act in the management of the waters of the drainage channel.

9. SAME—*fact that flood contributed to injury does not defeat recovery from sanitary district.* The fact that an unusual flood occurring after the opening of the channel of a sanitary district may have contributed to the destruction of the timber on plaintiff's land does not defeat a recovery from the defendant sanitary district, where the evidence shows with equal conclusiveness that the timber would not have been destroyed but for the subsequent intermittent overflow of the lands, caused by the discharge of water from the defendant district's channel.

10. SAME—*extent to which statute authorizing work is a protection.* If the act or work authorized by the legislature is done or constructed within the scope of the power granted, the grant operates as a protection against indictment or suit for any injury which is a necessary and probable result thereof; but beyond such probable consequences the legislative authority is no protection.

11. SAME—*when giving instructions not based on evidence will not reverse.* Giving instructions authorizing a recovery against a sanitary district if it has been guilty of negligence in the management of the waters of the channel is not ground for reversal even though there is no evidence of negligence, where the district is liable irrespective of the question of negligence and there is a count in the declaration alleging such liability.

12. SAME—*when recovery of attorneys' fees is authorized.* An action against a sanitary district to recover damages for timber killed and the loss of the use of pasture land caused by the intermittent and recurrent overflow of the land is for damages to real estate, within the meaning of section 19 of the Sanitary District act, and the plaintiff is entitled to recover his attorneys' fees.

HAND, J., CARTER, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. DUANE J. CARNES, Judge, presiding.

CHIPERFIELD & CHIPERFIELD, FRANK J. QUINN, JAMES S. HANDY, and WALTER E. BEEBE, (JOHN C. WILLIAMS, and P. C. HALEY, of counsel,) for appellant.

PEASE, SMIETANKA & POLKEY, (WARREN PEASE, and CHARLES P. MOLTHROP, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an action on the case brought by Owen S. Jones, appellee, against the Sanitary District of Chicago, appellant, in the superior court of Cook county. The original declaration consisted of one count, and was filed March 17, 1908. It alleged that appellee was, and had been for more than five years prior to the commencement of the suit, the owner in fee simple of 1976 acres of land in Cass county; that prior to the commission of the acts complained of, said land was covered by timber, the lumber of which was used for commercial and manufacturing purposes; that appellant in 1900 turned the waters of Lake Michigan and the Chicago river into the tributaries of the Illinois river, having theretofore, by virtue of authority conferred on it by law, cut certain channels connecting the said Chicago river with the tributaries of the Illinois river; that the flow of water through said channel and into the Illinois river was under the control of appellant, which might at all times regulate the same by means of certain appliances; that at various times during the five years prior to the commencement of the suit large quantities of water were caused to flow from Lake Michigan and the Chicago river into the Illinois river; that the lands of appellee lie adjacent to the Illinois river, in Cass county, and were overflowed as a result of this addition to the waters of the Illinois river; that because of the wrongful acts of appellant and the careless

and negligent management of said waters, and because of the increased flow into the Illinois river, the lands of appellee were overflowed for the greater portion of each year, causing large quantities of appellee's timber to die and rendering his land unfit for grazing and agricultural purposes. Subsequently appellee filed an additional count, in which he alleged that his lands were covered by timber of great value and in a lively and flourishing condition on March 17, 1903, and at that date, and at all times thereafter, appellant had caused the waters of Lake Michigan to flow through its drainage canal into the Illinois river, whereby the amount of water in said river had been greatly increased during the period from March 17, 1903, to the time of the beginning of the suit. The additional count further alleged that the canal was constructed and operated by appellant under a statute giving it power to do so, and which provided that it should be liable for all damage to real estate which should be overflowed or otherwise damaged by reason of the construction, enlargement or use of such channel. It contained the same allegations with reference to overflowing the lands as the original count, except that it did not charge that the overflowing of the lands was caused by any negligent act on the part of appellant. To both counts of the declaration appellant filed the general issue, a plea denying that appellee was the owner in fee simple of the lands described and a plea of the Statute of Limitations. A demurrer was sustained to the plea of the Statute of Limitations and appellant stood by its plea. The plea of the Statute of Limitations set up the organization of the sanitary district under the act of 1889, entitled "An act to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers;" that any channel constructed under the provisions of this act should be of certain size and capacity, and that in the event of its operation a continuous flow of 200,000 cubic feet of water per minute should be produced and maintained, and 20,000 cubic feet of water per minute ad-

ditional for every 100,000 inhabitants of the said district exceeding 1,500,000; that the channel was constructed pursuant to such authority, and that from January 17, 1900, when the channel was opened, there has been discharged through said channel into the Desplaines river the quantity of water required by the statute, to-wit, 300,000 cubic feet per minute; that the construction of the channel was and is a permanent work and was done in a skillful, prudent and workmanlike manner, and that from the time of the opening of said channel to the present time the flow of water required has been continuously maintained, and that any damage sustained by appellee was caused by the construction of the channel and the turning in of the water on January 17, 1900. Issues were joined on the plea of general issue and the plea denying appellee's title to the lands, and a trial resulted in a verdict for the appellee for $6250. Subsequently, appellee, under section 19 of the act of 1889, relating to sanitary districts, moved the court to fix his attorneys' fees, and upon a hearing the court allowed $3000 to appellee for his attorneys' fees and entered judgment on the verdict and for the amount of the fees. From that judgment appellant prayed an appeal to the Appellate Court for the First District, where, on motion of appellee, the cause was transferred to this court on the ground that a freehold is involved.

Appellant contends (1) that a freehold is not involved and that the cause should be re-transferred to the Appellate Court; (2) that the demurrer to the plea of the Statute of Limitations should have been overruled; (3) that the measure of damages adopted was improper; (4) that the verdict is against the weight of the evidence; (5) that the court erred in allowing appellee's attorneys' fees; and (6) that the court erred in giving and refusing instructions.

This is a suit for damages to real estate, and it was necessary that appellee allege and prove his ownership. In both the original declaration and in the additional count appellee

alleges that he owned the land in question at the time of the alleged trespasses. Appellant filed a plea denying that at the time of the beginning of the suit and during the time of the commission of the alleged offenses appellee was the owner of the lands. On the trial, to maintain the issues on his part, appellee made proof of his title, and the court instructed the jury that it was incumbent upon him to prove that during the five years next preceding March 17, 1908, he was the owner in fee simple of the lands described in the declaration. Appellant asked an instruction directing the jury to find it not guilty, for the reason that appellee had failed to show by competent evidence that he was the owner in fee of the lands described in the declaration; but this instruction was properly refused, for the reason that appellee had sufficiently proven his ownership. We have repeatedly held that when a freehold is so put in issue that a decision of the case necessarily involves a decision of that question, this court has jurisdiction on direct appeal. (*Monroe* v. *VanMeter,* 100 Ill. 347; *Piper* v. *Connelly,* 108 id. 646; *Malaer* v. *Hudgens,* 130 id. 225; *Van-Tassell* v. *Wakefield,* 214 id. 205; *Wachsmuth* v. *Penn Mutual Life Ins. Co.* 231 id. 29; *Schwitters* v. *Barnes,* 243 id. 493.) In this case, by filing its plea denying appellee's title the freehold was directly put in issue, and a decision of the case necessarily involved a decision of that issue. It is immaterial that appellant now concedes the title of appellee and does not care to further contest that point. It was a material issue in the trial court, and, being an action at law, the issues there determine the jurisdiction of this court on appeal. A freehold is involved within the meaning of the constitution, and the cause was properly transferred to this court.

The contention that the court erred in sustaining the demurrer to the plea of the Statute of Limitations is based upon the claim that as the building of the drainage canal is authorized by an act of the legislature and is permanent

in its character, the injury inflicted upon appellee, if any, is permanent, and he is limited to one cause of action for the recovery of all damages, past, present and prospective, and that his right of action accrued more than five years before the commencement of the suit. In support of this contention appellant relies on the class of cases which hold that when the original nuisance or cause is of a permanent character, so that the damage inflicted is of a permanent character and goes to the entire destruction of the estate affected thereby, the recovery not only may, but must, be had for the entire damage in one action, as the damage is deemed to be original. In those cases the injured lands were adjacent to the structure complained of, so that its construction necessarily and immediately destroyed or depreciated their value. This case does not fall within that class. The improvement known as the drainage channel is permanent in character, but it is not alleged that appellee suffered damage by reason of its construction. The construction and continuance of the channel more than two hundred miles from appellee's land is not necessarily an injury. It is the use that has been made of it that it is complained has caused the injury. The declaration alleges that the lands of appellee have been overflowed but a portion of each year. This might be caused by the emptying of more water from the channel into the river at some time than at others, or it might be the result of the confluence of the waters of the drainage channel with those of a freshet, or with the waters which cause an annual rise in our rivers. In either event it is contingent whether the lands of appellee shall suffer damage,—in the one case upon the action of those in control of the flow of water from the drainage channel, and in the other upon the action of nature. If the flooding was the result of the first named cause, then it was due to the negligent management of the flow through the channel, as the statute provides for a constant flow, which is not to be increased except as the popu-

lation of the district increases, in which case the increase will be permanent and the flow will still be constant. The fact that the channel is a permanent improvement does not, of itself, serve to determine when, if ever, or to what extent, injury will be suffered. That the injury complained of is not necessarily caused by the construction or existence of this permanent improvement is evidenced by the fact that at times the river is within its banks and the lands of appellee are not overflowed. If, as appellant contends, the Statute of Limitations runs as to such actions as this from the date the drainage channel was completed to Lockport and the flow of water turned on, it is possible for a party to be barred before he has suffered any injury whatever. It is the injury sustained which is the cause of action, and the statute does not begin to run before the cause of action accrues. The permanency of the injury is the test as to whether damages for all time must be assessed. In this case the declaration alleges that the flooding was intermittent and recurring. Both the declaration and the plea refer to the act of 1889, under which the district was organized. An examination of that act and the supplemental act of 1901, to extend the powers of sanitary districts, discloses that it was contemplated by the legislature that everything possible should be done to keep the waters of the sanitary district within the banks of the stream into which they empty, and the district was invested with extraordinary powers to accomplish this purpose and thus prevent the flooding of the adjacent bottom lands. An exhaustive discussion of the scope and purposes of the act of 1889 is found in *People* v. *Nelson,* 133 Ill. 565. While the plea states with particularity the construction and completion of its channel to Lockport and the flow of water which has been maintained at that point from its channel into the Desplaines river, it does not allege that any further work has been prosecuted or any attempt made to provide for keeping the waters of the district within the banks of the

Illinois river, or whether it is possible to so confine its waters. While, as the plea alleges, the channel of appellant was built under authority of law and may have been constructed in a proper and skillful manner, yet its continuance and operation, under the allegations of the declaration, will not necessarily result in injury to the lands of the appellee. Where the continuance and operation of a permanent structure are not necessarily injurious but may or may not be so, then only the injury sustained prior to the commencement of the suit may be compensated in that suit. *Sanitary District* v. *Ray,* 199 Ill. 63; *Valley Railway Co.* v. *Franz,* 43 Ohio St. 623; *Town of Troy* v. *Cheshire Co.* 23 N. H. 83; 2 Greenleaf on Evidence, (14th ed.) sec. 433.

Appellee cites a number of cases holding that under certain circumstances one has the right to elect whether to sue for permanent or temporary injuries, the latest being *Strange* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 245 Ill. 246. These cases are of value in determining the circumstances or conditions under which damages for a temporary injury may be recovered, but as the appellee, under the facts alleged, had the right to sue for injury suffered during the five years next preceding the commencement of his suit, it is not necessary to determine whether this is of that class of cases where he might have elected to recover for permanent injuries.

Appellant relies upon *Suehr* v. *Sanitary District,* 242 Ill. 496, as sustaining its contention that appellee's injuries are of a permanent character. In the *Suehr case* the injuries sustained were quite different from those alleged here. In that case Suehr undoubtedly suffered a permanent injury. His ford connecting the island with the main land was destroyed. A part of the island was washed away, including the timber along its edges, and its arable lands were largely submerged and its uses for agricultural purposes were largely destroyed. The injury sustained in that case was clearly of a permanent character, but the facts alleged in

this case are essentially different and do not bring it within the rule there announced.

Appellant contends that the only theory upon which appellee could recover was that the work of appellant was a nuisance and had not been constructed in accordance with law and in a careful and proper manner, whereas the work of the sanitary district, being permanent in character and authorized by the legislature, cannot be a nuisance when constructed properly. As a general proposition it is true that that which is authorized by the legislature cannot be a nuisance, but that statement is subject to some qualifications. If the act or work authorized is done or constructed within the scope of the power granted, any injury which is a necessary and probable result of the act so done in pursuance of legislative authority may be fairly said to be covered, in legal contemplation, by the legislature conferring power, and the grant operates as a protection against indictment or suit therefor. (2 Wood on Nuisances, p. 1046.) "It is only against such consequences as are fairly within the contemplation of the legislature in conferring the authority, and such results as are necessarily incident to its being done,—in other words, such results as are the natural and probable consequence of an exercise of the power at all,—that the grant operates as a protection. Beyond that it affords no protection whatever. It is sometimes laid down in elementary works and appears in the opinions of courts that that which is authorized by the legislature cannot be a nuisance. This is clearly erroneous in the sense in which it is generally understood. That which is authorized by the legislature, within the strict scope of the power given, can not be a public nuisance, but it may be a private nuisance, and the legislative grant is no protection against a private action for damages resulting therefrom." (2 Wood on Nuisances, p. 1058.)

As the injury counted on was not the immediate and direct result of the construction of the drainage channel but

was consequential and resulted from the recurrent and intermittent overflow of the lands of appellee, the demurrer to the plea of the Statute of Limitations was properly sustained.

Appellant next contends that the court adopted an improper measure of damages. Appellee was permitted to prove the extent of the damage done to his timber and to his pasture land, and to prove the market value of the timber destroyed and the value of his pasture lands, per acre, for each of the five years next preceding the commencement of the suit. Appellant contends that the correct measure of damages is the difference in value of the land before the same was overflowed and its value afterwards. Appellant bases this argument upon the fact, as it claims, that the injury appellee has suffered, if any, is of a permanent character, and all of the cases cited by it in support of its contention on this point are cases where permanent damages were sued for and recovered. In a case of permanent injury to realty there can be no question but that the measure of damages contended for by appellant is the correct one, but here appellee was not suing for permanent injury to his real estate, and his measure of damages was the actual loss sustained during the continuance of the injury. (3 Sedgwick on Damages,—8th ed.—secs. 933, 942.) Appellant also cites cases to the effect that when fruit or ornamental trees are destroyed, as they are of little or no value when severed from the realty, the measure of damages is the diminished value of the land. In this case appellee did not sue for damage to fruit or ornamental trees. The only trees alleged or proven to have been destroyed were the ordinary forest trees, which had no value except for the production of lumber. The market value of such trees is easily ascertained and was proven in this case. "A party may be content to accept the market value of the thing taken when he is also entitled to recover for the injury done to the freehold, but if he asserts his right to go beyond

the value of the thing taken or destroyed after severance from the freehold, so as to secure compensation for damage done to his land because of it, then the measure of damages is the difference in the value of the land before and after the injury." (*Dwight* v. *E. C. & N. R. R. Co.* 132 N. Y. 199.) "If the thing destroyed, although it is a part of the realty, has a value which can be accurately ascertained without reference to the soil on which it stands or out of which it grows, the recovery may be of the value of the thing thus destroyed and not for the difference in the value of the land before and after such destruction." (3 Sutherland on Damages,—3d ed.—sec. 1015.) The same author in the same volume, at section 1049, says: "For injury done to the plaintiff's crops by flooding his lands he is entitled to recover their value standing upon it so far as they are destroyed and the depreciation in value of such as are only injured or partially destroyed. * * * If the growth of grass is prevented and the owner is deprived of the use of the pasture for a considerable time, his damages are measured 'by the value of the use of the land for pasturage in the condition' it would have been but for the wrong done." (See, also, *City of Chicago* v. *Huenerbein*, 85 Ill. 594; *United States* v. *Taylor*, 35 Fed. Rep. 484.) The proper measure of damages was applied.

Appellant contends that the verdict is not sustained by the evidence, and under this point argues but two propositions: First, that the evidence discloses that all the damage done was by reason of the flood of 1902, more than five years prior to the commencement of this action; and second, that as there was no proof of negligence on the part of appellant in the management of the waters in the sanitary channel, the peremptory instruction offered by it at the close of plaintiff's evidence, and again at the close of all the evidence, should have been given.

The evidence on the part of appellee tended to prove that prior to the turning into the Illinois river of the water

of the drainage channel, in 1900, his land had been subject to the annual spring overflow of the Illinois river, but that since that time the annual overflow was increased and prolonged by reason of the presence of the waters of the sanitary district, and that his injury is occasioned by the waters remaining over his lands until the months of July and August, instead of the first of June, as theretofore. The evidence disclosed that the greatest flood since the waters of the sanitary district were turned in, in 1900, and before the commencement of the suit, was in 1902. That year the rainfall was heavier than usual and the water remained upon appellee's land for two hundred and seventy-six days, and it is the theory of appellant that it was this flood which caused the timber of appellee to die on the stump. The proof tended strongly to show that none of appellee's timber was killed as the result of one flooding, but that it required successive and repeated flooding to finally kill the trees. While it appears conclusively that the flood of 1902 contributed to the destruction of appellee's timber, still it appears just as conclusively that had no other floods occurred the timber would not have died by reason of that one flood, alone. From this it is shown that the injury to appellee was accomplished by reason of the floods which occurred within five years prior to the commencement of the suit, and is not attributable, as appellant contends, to the flood of 1902, alone.

As to the second contention of appellant under this point, it is true that there is little, if any, proof in the record of negligence on the part of appellant in the management of the flow of the waters from the channel into the Desplaines river. The only proof at all that can be said to have any bearing on that question is found in the testimony of George M. Wisner, the chief engineer of the sanitary district. He testified that since the channel was opened, on January 17, 1900, the amount of water that had been allowed to pass through the controlling works

at Lockport varied considerably, but that he would say it averaged 300,000 cubic feet per minute. Mr. Wisner was produced as a witness for appellee, but he did not testify how much nor at what times the flow varied from 300,000 cubic feet per minute. There was not sufficient ground in this testimony upon which to base a verdict that appellant had been negligent in allowing excessive amounts of water to pass through its controlling works at Lockport at the times the appellee's lands were flooded and that the floods were thus produced. Appellant's argument proceeds upon the theory that unless appellee has shown it to be guilty of negligence he is not entitled to recover. This is not correct. While the original count of the declaration charged appellant with negligence, the additional count does not so charge, and appellee is entitled to recover if he has been damaged, irrespective of whether appellant has been guilty of any negligent act. It is no defense for appellant to say that it was in the exercise of due care and caution in the management of the waters of the drainage channel. If, by reason of the flow of waters from the drainage district into the Illinois river, the lands of appellee have been overflowed and injured, appellant is liable. The peremptory instruction was properly refused.

Appellant objects to the giving of five instructions asked on behalf of the appellee. These instructions are all on the question of negligence and the lack of exercise of due care on the part of appellant, and it will not be necessary to set them out in full. The effect of each one of them was, that if the jury found that appellant had been guilty of negligence in the construction and operation of its channel and appurtenances or had not exercised reasonable care in that behalf, and that by reason thereof appellee's premises were injured, he was entitled to recover compensation. While, as we have noted, there is no evidence of negligence in this record, and these instructions should not, therefore, have been asked or given, we are unable to see wherein

appellant has been prejudiced by the giving of them. To thus narrow the right of the recovery inured to the benefit of appellant and did not prejudice it. In one of these instructions the jury were told that appellant, under the law of this State, was granted the power of eminent domain,— otherwise known as the power of condemnation,—to condemn property and appropriate for its use any land or the bed of any water-course within or without its drainage district, if it should deem it necessary and advisable for the construction, improving and carrying on of its sanitary channel, and if they found, from the evidence, that appellant, by the exercise of that right, could have made provision for the waters which it carried through its channel and emptied in the Desplaines river during the five years next preceding the commencement of the suit, and could thereby have provided for the carrying off of such waters, so that, in and of themselves, they could have caused no damage to appellee's trees and pasturage, the failure to exercise such right of eminent domain and so control such waters would authorize the jury to return a verdict in favor of appellee. While it is true that the statute grants appellant the power of eminent domain as stated in the instruction, there is no proof whatever in this record as to whether any attempt was made on behalf of appellant to exercise that right or to make any effort to deepen or widen the channel of the Illinois river, unless the same could be inferred from the testimony of Wisner, who testified that the construction of the channel had proceeded only as far as the city of Joliet, except that the dam at Kampville had been lowered, nor is there any proof that the situation would have been different had that been done. While this instruction should not have been given, we do not deem it so prejudicial as to warrant a reversal of the judgment.

The refusal of two instructions asked on behalf of appellant is also complained of. It is sufficient, in answer to appellant's contention in this regard, to say that the sub-

stance of those two instructions was contained in others given in the series, and for that reason they were properly refused.

Appellant finally contends that the court improperly assessed attorneys' fees in this case, and in support of this contention says that if the measure of damages is as held by the court then this is not an action to recover damages to real estate, and the court was not warranted, under section 19 of the act of 1889, in assessing attorneys' fees. Section 19 provides that every sanitary district shall be liable for all damages to real estate, within or without the district, which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of the act, and that in case judgment is rendered against the district for damages, the plaintiff shall also recover his reasonable attorneys' fees to be taxed as costs in the suit. This is clearly a case coming within the provisions of section 19, and appellee's attorneys' fees were properly taxed. No objection is made to the amount of the fees, the contention being, simply, that the court had no power to assess fees at all.

There being no reversible error in the record the judgment of the superior court is affirmed.

*Judgment affirmed.*

HAND, J., CARTER, C. J. and CARTWRIGHT, J., dissenting:

We are of the opinion under the averments of the declaration the main channel of the sanitary district is a permanent improvement and that the Statute of Limitations commenced to run from the date the water was turned into the said channel, and that the court erred in sustaining a demurrer to the plea setting up the five year Statute of Limitations. *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 Ill. 203; *Suehr* v. *Sanitary District,* 242 id. 496; *Miller* v. *Sanitary District,* 242 id. 321.