(No. 74-CC-0855—

LA SALLE NATIONAL BANK, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 30, 1978.*

RICHARD ALTIERI, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM J. KARAGANIS, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant in this cause seeks to recover from Respondent damages for breach of covenant in a lease.

On September 1, 1971, by a lease in writing, made between Claimant and Respondent, Claimant leased to Respondent certain premises located at 1325-53 West Washington Boulevard, Chicago, Illinois, with vacant land adjoining buildings.

The lease contained the following covenant:

"5. Lessee has examined and knows the condition of said premises, and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof, have been made by the Lessor or his agent prior to or at the execution of this lease, that are not herein expressed or endorsed hereon; Lessee will keep said premises, including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken; and replace all damaged plumbing fixtures with others of equal quality, and will keep said premises, including adjoining alleys, in a clean and healthful condition, according to the City Ordinances, and the direction of the proper public officers, during the term of this lease, at Lessee's expense; and will without injury to the roof, remove all snow and ice from the same when necessary, and will remove the snow and ice from the sidewalks abutting said premises; and upon the termination of this lease, in any way, will yield up said premises to Lessor in good condition and repair (loss by fire and ordinary wear excepted) and deliver the keys therfor at the place of payment of said rent."

Respondent entered into possession of said premises, under said lease, from September 1, 1971, and vacated said premises on June 30, 1973.

The record in this case is rather voluminous.

This case hinges upon the amount of damages, if any, over and above ordinary wear and tear of the premises.

The evidence does indicate that the building was in a rather deplorable condition when vacated by the State of Illinois. There is evidence to the effect that partitions had been put in which had not been removed, considerable damage had been done to toilet

facilities and walls, and considerable trash and debris had accumulated. There was also evidence that boilers had been stripped of electric motors, doors were gone, and electrical wiring had been broken off. Evidence was introduced showing that paint had been sprayed on the walls and the elevators were in need of considerable repair.

This case poses an unusual problem in that a distinction must be made between ordinary usage and usage that caused the damages over and above ordinary use of said premises.

Claimant makes much of the fact that at about the time the building was rented to the State, it received an offer of $300,000.00 from a prospective buyer in September 1971. The building was finally sold in 1973 for the sum of $150,000.00-$50,000.00 of this price being paid for the vacant land and $100,000.00 for the building itself. Claimant alleges that the reduced selling price was because of the disrepair and damaged condition of the building.

The plumbing contractor testified the cost of repairing the plumbing in the building amounted to $3,168.00.

A service manager for the Reliance Elevator Company testified that repairs to the east elevator would be $9,215.00, and the cost to repair the west elevator would be $7,834.00.

An individual from the Midwesco Service Company, who specializes in repairing heating equipment, boilers and burners, testified that the fair value of parts and labor to repair the boiler, oil burners and pump was $8,876.00, and he further testified that the cost to remove a 12" wall would be $1,285.00.

A general contractor testified that the cost to dismantle certain partitions, replace windows, make masonry, carpentry and floor repairs and painting and fencing repairs would be $9,217.00.

One of the contentions of Respondent was that there must be "out-of-pocket expenditures" before the sale of the building to justify an award of damages to Claimant. Respondent further contends that since the building was sold in 1974 and repairs were not made, Claimant is not entitled to recover for any damages sustained. This seems contrary to the Court's opinion in the *349 West Ontario Bldg.* case, *317 N.E.2d 740, at 749,* in which the Court stated "if they could have shown that specific damaged conditions which were caused by the (sub) tenants caused corresponding specific reductions in the market value, they could recover."

In the case at bar, various servicemen tesified on behalf of Claimant and submitted itemized costs of damages sustained and, in most instances, claims for damages were over and above ordinary wear and tear.

The following cases seem to sustain the position of the Claimant:

In *Lucas v. Bowman Dairy Co., 50 Ill. App.2d 413 at 419,* the Court held:

"The cost of the rest of the work—painting, papering and replacing glass—is documented by "Estimates" from service men—we believe that this evidence, offered by a Plaintiff with 33 years of experience in interior decorating, was sufficient to form a basis on which the jury could determine reasonable cost of restoring the building."

Here, it has been clearly shown that on June 15, 1973, the landlord and tenant's representative (Daniels) inspected the premises and identified the damage-conditions which needed to be repaired.

It is noted that the parties to this case *stipulated* that:

"On September 20, 1973, letter sent to State of Illinois, Department of General Service, Real Estate and Leasing Division, making a demand for payment of damages."

Each serviceman's testimony not only was persuasive but also unimpeached either to their individual qualification as experienced in their individual field or their individual itemized repairs necessary to restore the damaged building.

In *15 Am. Jr., DAMAGES,* Sec. 106, page 514:

"There is no fixed rule for determining the measure of damages for injuries to...property in every case. The amount to be awarded depends upon the character of the property and the nature and extent of the injury, and the mode of the amount of proof must be adapted to the facts of each case."

In *Libbra v. Mt. Olive & S. Coal Co., 29 Ill. App.2d at page 401,* the Court in following *Am. Juris,* stated:

"The question here presented is whether or not a fair determination of the damages to the owner of the farm could be arrived at by the testimony of the value of the premises before there was any contamination as compared with the value of the premises after the land was contaminated."

The *Libbra* decision, in following *Am. Jr.,* said:

"The Courts have previously considered the probative value of such testimony, citing: *Ottawa Gas Light & Coke Co. v. Graham, 28 Ill. 73, Jones v. Sanitary Dist. of Chgo., 252 Ill. 591, Canteen H & F. Ass'n v. Schwartz, 128 Ill. App. 224 (226), Mickley v. General Roofing Mfg. Co. v. 179 Ill. App. 493 (496), Hubele v. Baldwin, 332 Ill. App. 330 (334), Phoenix v. Graham 349 Ill. App. 326."*

It appears that some damages were done to the premises in question. In view of the fact that repairs were not actually made and paid for, the Court can only estimate what a fair amount would be to compensate Claimant for its loss.

It is the Court's opinion that a fair figure would be in the amount of $20,000.00, for damages over and above ordinary wear and tear.

An award is hereby entered in favor of Claimant in the sum of $20,000.00.