RICHARD W. GVILLO, SR., *et al.*, Plaintiffs-Appellants and Separate Defendants-Appellants, v. GERALD J. STUTZ *et al.*, Defendants-Appellees (Thomas DeClue, Jr., Third-Party Plaintiff-Appellee and Separate Plaintiff-Appellee; Sheppard, Morgan and Schwaab, Inc., Third-Party Defendant-Appellee).

Fifth District   No. 5—98—0165

Opinion filed August 12, 1999.

Charles W. King, of Edwardsville, for appellants.

William J. Meacham, of Edwardsville, for appellees John C. Stutz, Janet Stutz, Christopher D. Stutz, and Valerie A. Stutz.

William J. Knapp and Robert J. Evola, both of Burroughs, Hepler, Broom, MacDonald & Hebrank, of Edwardsville, for appellee Thomas DeClue, Jr.

JUSTICE MAAG delivered the opinion of the court:

This appeal involves a dispute over property lines. Plaintiffs, Richard Gvillo and Ellen Gvillo, filed a complaint against Thomas De-Clue and the Stutz defendants seeking injunctive relief and compensation for property damage. Thomas DeClue filed a separate suit asking the court to appoint a commission of surveyors, pursuant to the Permanent Survey Act (765 ILCS 215/0.01 et seq. (West 1994)), to resolve the boundary conflict. The court consolidated the actions. The case was tried as a combination jury trial and bench trial due to the nature of the actions. The jury found defendant Thomas DeClue liable for property damage and awarded plaintiffs $6,000 in damages. The court found that the commission of surveyors' report was accurate and established the boundaries of the disputed property as a matter of law. The court apportioned the commission's fees and costs among the parties and ordered the Gvillos to pay 50%, the Stutz defendants to pay 25%, and DeClue to pay 25%. The Gvillos appeal the judgment and claim that the trial court erred in giving an improper damages instruction and in requiring them to pay any portion of the fees of the commission.

A brief rendition of the pertinent facts follows. Richard Gvillo and Ellen Gvillo owned certain real property in Madison County, Illinois. This property was adjoined on the north and east by real property owned by the Stutz defendants (Stutz). A disagreement developed between the Gvillos and Stutz as to the true east-west property line. The disputed land is roughly 20 feet by 500 feet and contains a mixture of trees, plants, and underbrush. Stutz relied upon a survey performed by Sheppard, Morgan & Schwaab, Inc. (Sheppard). The Gvillos relied upon two surveys, one performed by Heneghan & Associates, Inc., and one performed by Flagg and Associates, Inc. Both of the Gvillos' surveys reached the same result regarding the boundaries of the disputed property. The Sheppard survey plotted different boundaries. This was partly due to the fact that the Sheppard surveyors did not accept a stone monument as a reliable quarter-section corner marker.

On May 6, 1994, the Gvillos filed a complaint seeking to enjoin Stutz from erecting a fence and destroying vegetation or trees on the Gvillos' property. Sometime thereafter, Thomas DeClue obtained an interest in the subject property as part of a deal involving Stutz. De-Clue sought this property because his sons wanted to build homes and settle in a secluded area. In 1994, DeClue hired the Sheppard firm to survey his property and stake the road. The Sheppard firm assured DeClue that its survey was accurate and that the firm would stand behind the survey. In February 1995, DeClue's sons started to clear the land of trees and brush in order to erect a road so that they could begin construction.

On April 1, 1996, when attempts to resolve the boundary matter failed, Thomas DeClue filed a petition for the appointment of a commission of surveyors pursuant to section 3 of the Permanent Survey Act (765 ILCS 215/3 (West 1994)). On April 12, 1996, the Gvillos added DeClue as an additional defendant in their lawsuit. The Gvillos sought injunctive relief and monetary compensation, claiming that DeClue destroyed trees and vegetation and harmed the topography on the Gvillos' property. DeClue then filed a third-party claim against the Sheppard firm for indemnity. The court consolidated DeClue's action with the Gvillos' action.

In their first point, the Gvillos allege that the trial court erred in permitting the jury to decide the issue of damages. The Gvillos claim that Thomas DeClue did not file a timely jury demand and that the court had indicated that the jury would act in an advisory capacity on the issue of damages. The Gvillos also claim that the court erred in giving a damages instruction that did not set forth the appropriate elements of damage.

The record reveals that the court met with counsel prior to jury selection. The attorneys and the court discussed which issues should be decided by the court and which issues could be decided by a jury. During this hearing, the Gvillos' counsel argued that the jury should decide the property-damage issue. The court determined that it would rule on the accuracy of the report prepared by the commission of surveyors and the apportionment of fees and costs associated with the preparation of that report. The court also determined that the jury would decide issues of liability for property damage and the amount of compensation. The court reserved ruling, until the evidence was presented, on which elements of property damage would be submitted to the jury.

Prior to the jury-instructions conference, the court again outlined which issues were going to be decided by the court and which were to be submitted to the jury. The Gvillos' counsel did not raise any objec-

tion to the division of issues between the court and the jury. The Gvillos' counsel did object to the damages instruction tendered by DeClue.

■ After reviewing this lengthy record, we found nothing to indicate that the Gvillos' counsel objected prior to or during the trial to the jury's consideration of damages. The Gvillos have not directed us to any place in the record where they objected to or moved to strike DeClue's jury demand. Nor did counsel include either claim of error in the posttrial motions. The Gvillos failed to preserve the issue for appellate review. See *H. Vincent Allen & Associates, Inc. v. Weis*, 63 Ill. App. 3d 285, 379 N.E.2d 765 (1978); *Myers v. Arnold*, 83 Ill. App. 3d 1, 403 N.E.2d 316 (1980).

In their argument, the Gvillos seem to suggest that the trial court indicated that it would only use the jury's decision on damages as an advisory opinion. The record does not support the Gvillos' claim. Prior to trial, the court considered whether to permit the jury to issue through a special interrogatory an advisory finding on the accuracy of the commission of surveyors' report. The court also discussed whether to submit special interrogatories to the jury regarding the elements of property damage. Throughout these discussions, the court never stated that the jury's decision on the damages issue would be advisory. In our view, the court neither suggested nor implied that the jury would be acting in an advisory capacity on the issue of damages.

We now turn to the central issue raised in this first point. The Gvillos argue that the court erred in giving DeClue's damages instruction and rejecting their damages instruction. The Gvillos claim that DeClue's instruction did not set forth the appropriate elements of damages, given the evidence in the case. The Gvillos contend that the compensation for real-property damages should have been measured by the reasonable expense of necessary repairs to the property that was damaged, and they cite Illinois Pattern Jury Instructions, Civil, No. 30.17 (3d ed. 1995). The Gvillos claim that they presented substantial evidence regarding the reasonable expense of necessary repairs and that it was error not to instruct the jury on those elements of damages.

DeClue's instruction directed the jury to measure the damages based upon the difference between the fair market value of the real estate immediately before the occurrence and its fair market value immediately after the occurrence. DeClue contends that Illinois Pattern Jury Instructions, Civil, No. 30.18 (3d ed. 1995), is the proper instruction. The court refused the Gvillos' instruction and instead gave the instruction tendered by DeClue.

■ In determining which measure of damages to use, the trial court must examine the exact interest harmed. " 'If the thing

destroyed, although it is part of the realty, has a value which can be accurately ascertained without reference to the soil on which it stands or out of which it grows, the recovery may be of the value of the thing thus destroyed and not for the difference in the value of the land before and after such destruction' [citation]." *Jones v. Sanitary District*, 252 Ill. 591, 602, 97 N.E. 210 (1911); *First National Bank v. Amco Engineering Co.*, 32 Ill. App. 3d 451, 335 N.E.2d 591 (1975).

When the thing taken, such as timber or crops, has a value of its own when severed from the land, the landowner may ask for that value. When the thing taken has no value apart from the land, such as grass for pasture land, the damages are measured by the value of the use of the land for pasturage in the condition it would have been had the wrong not been done. See *Jones*, 252 Ill. at 602.

Under some circumstances, the proper measure of damages may be the cost of the restoration of the property to its condition before the injury occurred, as where the injury is susceptible to be repaired at moderate expense and the cost of the restoration may be shown with reasonable certainty. See *Kremeyer v. Shumate*, 20 Ill. App. 2d 542, 156 N.E.2d 271 (1959).

Where the interest is purely financial, as where the land was purchased as a business investment with an eye toward speculation or where it is held solely for the production of income, allowing the plaintiff to recover the lesser of the cost of repair or the diminution of value may be appropriate. But this measure of damages may be inadequate in cases where the land is held for personal use, such as a family residence, and the harm may be corrected with a reasonable expenditure, even if that exceeds the amount the land has decreased in value. *Myers*, 83 Ill. App. 3d at 8; *Arras v. Columbia Quarry Co.*, 52 Ill. App. 3d 560, 367 N.E.2d 580 (1977).

■ In this case, the Gvillos testified that this property was being developed for investment purposes. They intended to create a lake and develop and market the property as lakefront lots. Under their plan, the vegetation and trees destroyed would have provided a screen between their property and the property to the north owned by Stutz. The Gvillos offered evidence that the cost to replace the destroyed trees and vegetation was $22,000.

The Gvillos offered no evidence that the trees and vegetation had a market value when severed from the real property. Although the Gvillos claimed that the land was being developed as investment property, the Gvillos neither alleged nor presented any evidence that this property lost any portion of its value as development property due to the destruction of the trees and vegetation. The Gvillos did not claim or present any evidence that the market value of these lots had been

or would be reduced due to the damage. The amount that the Gvillos claimed for restoration grossly exceeded the diminution in value. Repairs could not be made at moderate expense. Based upon this record, we find that the trial court properly instructed the jury to evaluate the damages based upon the diminution in value.

█ Richard Gvillo testified that he purchased the property in 1987 for $875 per acre. The size of the property at issue is less than one acre. The jury awarded $6,000 in damages. This is more than seven times the amount the Gvillos paid for the property. We cannot say that the award is palpably inadequate or that it bears no rational relationship to the loss suffered by the Gvillos. See *Gill v. Foster*, 157 Ill. 2d 304, 626 N.E.2d 190 (1993). We do not find the verdict to be against the manifest weight of the evidence.

█ In their second point, the Gvillos contend that the trial court abused its discretion in granting Stutz's motion for a directed verdict. At the close of the Gvillos' case, Stutz moved for a directed verdict. Stutz claimed that the Gvillos failed to present any evidence that Stutz did any damage to the Gvillos' property. The Stutz defendants argued that the only thing they did was hire a reputable surveyor to perform a survey and on the basis of the survey grant an easement to DeClue.

In this case, the Gvillos admitted on the stand that Stutz did no harm to their land. There was no evidence that the Stutz defendants were negligent in hiring the surveyor or in granting an easement to DeClue based upon the survey. We find that the Gvillos failed to prove essential elements of their claims against Stutz. See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). Taking the evidence in a light most favorable to the Gvillos, we find that the court correctly granted a directed verdict in favor of Stutz.

█ In their final point, the Gvillos allege that the trial court abused its discretion in requiring them to pay a substantial portion of the fees and costs of the commission of surveyors. Thomas DeClue filed a petition for the appointment of a commission of surveyors because of the ongoing dispute among the Gvillos, Stutz, and himself as to the corners and boundaries of the subject property. The court, after a hearing, granted the petition and appointed a commission of surveyors over the Gvillos' objections.

After the trial, the court found that the commission's report was accurate and that it permanently established the boundaries as a matter of law. The court then apportioned the fees and costs of the commission among the parties pursuant to section 4 of the Permanent Survey Act (765 ILCS 215/4 (West 1994)). The court found that the Gvillos, DeClue, and Stutz had interests in establishing a boundary

and resolving the dispute and that Stutz and DeClue had identical interests. The court then apportioned the commission's fees among the parties and ordered the Gvillos to pay 50%, Stutz to pay 25%, and DeClue to pay 25%.

The relevant provisions of section 4 of the Permanent Survey Act state:

"The corners and boundaries established in the survey as approved in the final judgment of the courts, if not appealed according to the Supreme Court Rules, shall be held and considered as permanently and unalterably established according to the survey. The expenses and costs of the surveys and suit shall be apportioned among all the parties, according to their respective interests." 765 ILCS 215/4 (West 1992).

The statute requires the trial court to apportion the costs according to the parties' respective interests. However, the statute does not define "respective interests." Based upon the four reported cases that have interpreted this section, the ownership of the land is not paramount. The manner of allocating costs depends upon a determination by the trial court of who is interested in the location of the line. See *Dorsey v. Ryan*, 110 Ill. App. 3d 577, 586, 442 N.E.2d 689, 695 (1982). The apportionment must be equitable. See *Stevens v. Allman*, 68 Ill. 245 (1873).

We agree with the trial court's determination that the Gvillos, Stutz, and DeClue have interests in ascertaining accurate boundaries, fixing property rights, and resolving this dispute. But we do not agree that Stutz and DeClue have identical interests, nor that Stutz and DeClue have any less interest than the Gvillos in establishing accurate boundaries and resolving the dispute. In our view, each party demonstrated a passionate desire to resolve the boundary issue but remained entrenched in a "winner take all" position. The Gvillos chose to rely upon two surveys favorable to their position and refused to contribute to the cost of an "independent" survey. Stutz and DeClue relied upon the Sheppard survey and refused to surrender a copy of that survey to the Gvillos.

Considering these factors, we find that these parties have distinct but equivalent interests in resolving the boundary dispute. In our view, an equitable apportionment requires each party to pay one-third of the commission's fees and costs, and we modify the judgment accordingly. The commission submitted charges totaling $20,238.92. Therefore, we order each party to pay one-third ($6,746.31) of the commission's total charges. If any party has paid more than its one-third share, counsel shall devise a method to reimburse that party. Reimbursement, if any, shall be made and the commission shall be

paid within 30 days of the issuance of this court's mandate. In all other respects, the judgment is affirmed.

Accordingly, the judgment of the circuit court is affirmed as modified.

Affirmed as modified.

WELCH and HOPKINS, JJ., concur.