GORDON G. GASS *et al.,* Plaintiffs-Appellants and Cross-Appellees, v. METRO-EAST SANITARY DISTRICT *et al.,* Defendants-Appellees and Cross-Appellants.

Fifth District   Nos. 5—88—0241, 5—88—0278 cons.

Opinion filed August 3, 1989.—Rehearing denied September 8, 1989.

1078

Harry J. Sterling and John Long, both of Sterling, Stanley & Kelley, P.C., of Fairview Heights, for appellants.

Amiel Cueto and Christopher Cueto, both of Cueto, Daley, Williams, Moore & Cueto, Ltd., of Belleville, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

The plaintiffs, Gordon G. Gass and Mary Jane Gass, initially sought in a four-count complaint filed on April 10, 1984, compensatory damages for negligence, punitive damages, injunctive relief, and a writ of *mandamus* against the defendants, Metro-East Sanitary District and Walter Greathouse, who was chairman of the Metro-East Sanitary District. In an amended three-count complaint filed on April 18, 1984, the plaintiffs sought compensatory damages, punitive damages, and equitable relief. The plaintiffs alleged that "from and after January 1, 1981, to the present" the defendants had been charged, pursuant to sections 4—15 and 1—1 *et seq.* of chapter 42 (Ill. Rev. Stat. 1981, ch. 42, pars. 4—15, 501—1 *et seq.*), with the responsibility of maintaining the Cahokia Canal, located in Madison and St. Clair Counties. They alleged further that the defendants had been guilty of failure to inspect the canal, failure to maintain it, failure to prevent accumulation of silt and debris in it, and failure to take adequate steps to prevent

erosion on its banks. As a result, they alleged, flooding of plaintiffs' farmlands had occurred, having destroyed crops planted there in 1981, 1982, and 1983.

Thereafter, on May 23, 1984, the defendants moved to dismiss the complaint on a number of grounds. They contended, *inter alia*, that the defendant sanitary district owed no legal duty to the plaintiffs, and that, even if such a cause of action existed, it was barred by what was described as "the statute of limitations" without further elaboration. They argued also that punitive damages cannot be recovered against a municipal corporation. The trial court allowed the defendants' motion as to the prayer for punitive damages but denied it in all other respects.

Thereafter, on January 9, 1987, the plaintiffs moved to amend their amended complaint by interlineation so as to allege damages arising out of the destruction of their crops in 1984 as well. On February 10, 1987, the defendants moved to dismiss the plaintiffs' complaint because proper notice of injury had not been provided to them pursuant to sections 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, pars. 8—102, 8—103) (hereafter referred to as the Tort Immunity Act) or section 1—5 of the Metro-East Sanitary District Act of 1974 (Ill. Rev. Stat. 1981, ch. 42, par. 501—5). Section 8—102, which was repealed effective November 25, 1986, provided that "any person who is about to commence any civil action for damages" against a local public entity must provide notice to that entity within one year from the date of injury or the date the cause of action accrued; section 8—103 provides that if this notice is not given, the person who was injured is forever barred from bringing suit. (Ill. Rev. Stat. 1981, ch. 85, pars. 8—102, 8—103.) Section 1—5 of the Metro-East Sanitary District Act of 1974 provides in pertinent part:

> "No claim for compensation shall be made or suit for damages filed against such district on account of any damage to property, unless notice in writing is filed with the board within 6 months after the occurrence of the damage or injury giving the name and residence address of the owner of the property damaged, its location and the probable extent of the damage sustained." (Ill. Rev. Stat. 1981, ch. 42, par. 501—5.)

It is undisputed that the plaintiffs gave no notice to defendants in advance of filing suit on April 10, 1984. In the alternative the defendants asserted that the plaintiffs should be prohibited from claiming any damages that had allegedly occurred "two years prior" to filing. The defendants maintained that their duty to provide flood protection was

a general duty owed to the public at large and that, in the absence of an allegation of facts demonstrating a special duty owed by a municipal corporation to a plaintiff, which duty is different from the duty owed to the public at large, a plaintiff's complaint is substantially insufficient and should be dismissed.

On June 5, 1987, the trial court denied defendants' motion to dismiss, ruling that the original complaint constituted sufficient notice to the defendant, but limited any recovery for damages to only those damages that had occurred six months prior to the filing of the complaint. The trial court allowed the plaintiffs' motion to amend their complaint to allege injuries to their property that had occurred after the filing of the complaint but stated that "the six month rule applies as stated above."

On September 18, 1987, the plaintiffs again moved to amend their amended complaint by interlineation, this time so as to allege injuries arising out of the destruction of their crops in 1984, 1985, 1986, and 1987. On October 9, 1987, the trial court denied the plaintiffs' motion for leave to amend, stating that they must file a separate lawsuit and that the "six month notice requirement applies, that is[,] any new allegations of negligence can relate back only six months from date of filing." The court expressly denied leave to amend "to allege damages incurred during period of time: April 10, 1984 through April 9, 1987."

Thereafter the plaintiffs moved on October 20, 1987, that the court reconsider its order of October 9, 1987, or in the alternative to make a finding that there is no just reason to delay an appeal pursuant to Supreme Court Rule 304 (107 Ill. 2d R. 304). On October 27, 1987, the defendants moved for summary judgment. On April 22, 1988, the trial court denied the motions of both parties. In its order the court stated that the basis for its orders of June 5 and October 9, 1987, was "the Court's interpretation of the plaintiffs' failure to abide by the six month statutory notice provision found at Ill. Rev. Stat. ch. 42, §501—5, commonly known as the Metro East Sanitary District Act of 1974." The court agreed with the plaintiffs that it would be wasteful of the resources of both the parties and the court to require the plaintiffs to put on their entire case in order to appeal the order limiting their recovery to injury allegedly sustained from October 10, 1983, to April 10, 1984. The court questioned whether an appeal under Supreme Court Rule 304 or 308 was more appropriate since

> "[t]he answer to this question depends, in good part, on the view taken of the claim for relief presented by the plaintiffs.
>
> The defendants have argued that a separate cause of action arises for the plaintiffs on each occasion of flooding of their land

and crops, which separate cause of action is subject to the notice requirement and statute of limitations applicable to causes of action against the Metro-East Sanitary District. If this view is taken of the plaintiffs' claim for relief, then the Court's refusal to allow the plaintiffs to seek damages for injury to their land and crops which allegedly occurred at a time other than the six months immediately preceding April 10, 1984, amounts to a final disposition of several other causes of action possessed by the plaintiffs: that is, those causes of action arising from floods which occurred before October 10, 1983, or after April 10, 1984.

This view is one which the Court has already taken in its rulings of June 5, 1987, and October 9, 1987, and, to be consistent, the Court will adhere to that view. The Court, therefore, finds, pursuant to Illinois Supreme Court Rule 304(a), that there is no just reason for delaying enforcement of—or appeal from—its orders of June 5, 1987, and October 9, 1987, which denied the plaintiffs' motions for leave to amend their Amended Complaint and which thereby finally disposed of the plaintiffs' causes of action arising from flooding of their land which occurred before October 10, 1983, or after April 10, 1984.

The Court notes, however, that—if the plaintiffs' view of its claim for relief (that they are asserting a claim based upon a single, continuing injury) were taken—the Court's orders of June 5, 1987, and October 9, 1987, would not dispose of entire claims for relief but, instead, would merely rule on questions presented by a single claim for relief not yet entirely disposed of. Under that view of the plaintiffs' claim for relief, it would be more appropriate to allow the plaintiffs to appeal immediately from the orders of June 5, 1987, and October 9, 1987, pursuant to Illinois Supreme Court Rule 308."

To insure the plaintiffs' ability to appeal under one of the two supreme court rules, the trial court made the findings required by Rule 308. The court set forth the questions of law as to which there is a substantial ground for difference of opinion as follows:

"1. Have the plaintiffs alleged that they have suffered, and are suffering, an ongoing injury at the hands of the defendants?

2. Should the plaintiffs be barred from seeking damages for that part of the injury to their land which occurred more than six months before their filing of their initial complaint in this case on April 10, 1984?

3. Should the plaintiffs be barred from updating their amended complaint by further amending it to seek damages for

that part of the injury to their land which has occurred during the pendency of this suit?

4. Should the amendment by interlineation which the plaintiffs sought to make, by their motion filed on September 16 [*sic*], 1987, be held to relate back to the date of their filing their original complaint in this case: that is, back to April 10, 1984?

5. Did the plaintiffs' failure to serve a notice (other than by filing their complaint against the defendant Metro-East Sanitary District in this case) pursuant to either section 8—102 of the Tort Immunity Act or section 501—5 of the Metro-East Sanitary District Act of 1974, require the dismissal of the plaintiffs' case or a restriction of the period of time for which the plaintiffs could seek damages for the flooding of their land and crops?

6. Did the two-year statute of limitations set forth in section 8—101 of the Tort Immunity Act apply to the plaintiffs' cause of action and bar the plaintiffs from seeking damages from the Metro-East Sanitary District for floods that occurred more than two-years [*sic*] before the filing of the plaintiffs' original complaint?"

As to these issues the court designated the plaintiffs the appellants and the defendants the appellees.

In denying the defendants' motion for summary judgment, the court found the following issues to be questions of law as to which there is substantial ground for difference of opinion:

"1. Whether the Metro East Sanitary District, a municipal corporation, owed the plaintiffs a legal duty of care.

2. Whether there's any genuine issue as to any material fact regarding the defendants' alleged breach of the standard of care.

3. Whether there is any genuine issue as to any material fact regarding the proximate causal connection between the alleged breach of the standard of care and the claimed damages.

4. Whether there is any genuine issue as to any material fact regarding whether the plaintiff suffered any legal damages."

With regard to these four issues the court designated the defendants the cross-appellants and the plaintiffs the cross-appellees.

We allowed the interlocutory appeal of the parties pursuant to Rule 308. Thereafter the plaintiffs filed a notice of appeal. The two appeals have been consolidated.

We turn first to the issue presented by the plaintiffs pertaining to the statute of limitations. The plaintiffs contend that because the in-

jury about which they complain is "ongoing," no statute of limitations—neither the six-month notice period under section 1—5 of the Metro-East Sanitary District Act of 1974 nor the two-year statute of limitations under section 8—101 of the Local Government and Governmental Employees Tort Immunity Act—has yet begun to run. The plaintiffs maintain in their brief that they could therefore "now, for the first time, file a complaint seeking damages for all the injury which they have suffered from the defendants' actions since January 1, 1981." They claim that the defendants' wrongful actions, in failing to correct the silted-in condition of the Cahokia Canal and thereafter to keep it in reasonable repair, have continued since January 1, 1981, thereby damaging every crop the plaintiffs have planted in the succeeding years. At oral argument counsel for plaintiffs stated that the flooding complained of "wasn't continuous in the sense that the water came on the land and stayed there all year round" but, rather, was "continuous in the sense that every crop year this man's crop was destroyed." Thus, involved here are successive instances of flooding of the plaintiffs' land. The defendants take the position that the plaintiffs have claimed crop losses for successive years due to intermittent and recurrent overflows of their land and that each successive overflow is its own suit and would require its own notice and limitation period.

■ Where a tort involves repeated injury, the limitation period begins to run from the date of the last injury or when the tortious acts cease. (*Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39; *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 443 N.E.2d 737.) In Illinois, whether separate causes of action accrue at each successive injury by an unnatural overflow requires a further analysis of the cause of the overflow. (*Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 456 N.E.2d 904.) When a structure is placed on dominant land which unreasonably increases the flow onto the servient land, a cause of action may accrue upon the completion of the structure if it is a permanent structure which is necessarily injurious by reason of its construction. (*Firestone*, 119 Ill. App. 3d 685, 456 N.E.2d 904; see *Suehr v. Sanitary District* (1909), 242 Ill. 496, 90 N.E. 197.) If, however, the structure is not necessarily injurious but may be used in a way which may or may not result in injury, the cause of action does not accrue until the use of the structure causes injury. (See *Jones v. Sanitary District* (1911), 252 Ill. 591, 97 N.E. 210; *Firestone*, 119 Ill. App. 3d 685, 456 N.E.2d 904.) Where the continuance and operation of a permanent structure are necessarily injurious, then damages for all the injury sustained must be recovered in one suit (*Vette v. Sanitary District* (1913), 260 Ill. 432, 103 N.E. 241); that is, where injury

occurs as the result of the construction or the proper operation of a permanent structure, then the injury is considered permanent and the limitations period runs from the date that the construction was completed (*Kurtz v. County of Logan* (1987), 158 Ill. App. 3d 715, 511 N.E.2d 252; see *Vette*, 260 Ill. 432, 103 N.E. 241; *Anderson*, 119 Ill. App. 3d 1070, 458 N.E.2d 39) or from the time when the plaintiffs knew or should have known of their injury and its cause (*Kurtz*, 158 Ill. App. 3d 715, 511 N.E.2d 252; see *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976). On the other hand, where the continuance and operation of a permanent structure are not necessarily injurious, but may or may not be so, then only the injury sustained prior to the commencement of the suit may be compensated in that suit (*Jones*, 252 Ill. 591, 97 N.E. 210); that is, where the injury was not the necessary, immediate, and direct result of the construction undertaken, but resulted from recurrent and intermittent overflows of land caused either by negligent use or operation of the structure or by natural phenomena, then the limitations period runs from the last overflow and only the damages caused by that overflow are compensable in that suit (see *Jones*, 252 Ill. 591, 97 N.E. 210; *Kurtz*, 158 Ill. App. 3d 715, 511 N.E.2d 252; *Anderson*, 119 Ill. App. 3d 1070, 458 N.E.2d 39).

In *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 443 N.E.2d 737, the plaintiff alleged receipt of injury upon two separate occasions during unusually heavy rainstorms, in 1974 and again in 1980, as a result of the defendants' negligence with respect to a culvert system. The plaintiff had filed suit for damages arising out of these two injuries on February 17, 1981. The court on review found the rule applicable to the situation before it to be that separate causes of action accrue and start new periods of limitations at each successive injury by overflow. The court concluded that, assuming the plaintiff's allegations could be proved, he was the victim of "repeated" (110 Ill. App. 3d at 1079, 443 N.E.2d at 740) injury. It determined that a two-year statute of limitations applied and held that, for purposes of the plaintiff's injury in 1980, the statute had begun to run on June 2, 1980, the date on which his driveway was washed away during one of the two rainstorms. As a result, contrary to the determination of the trial court, his suit for the injury of 1980 was not time barred. Although the plaintiff had contended that the defendant city was estopped from asserting the defense of the statute of limitations because of its partial payment for the injury of 1974, the court made no express determination concerning the injury of 1974.

In *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 1075, 458 N.E.2d 39, 43, the plaintiffs sought damages from the defendant, the

Village of Third Lake, allegedly caused by flooding of their property as a result of the " 'improper construction' " of a dam. Like the plaintiffs herein, the plaintiffs there contended, with regard to the defendant's statute of limitations defense, that their injury was continuous, that the tortious act had not yet ceased, and that, therefore, the time period had not yet begun to run. However, they had failed to allege in their complaint the date on which their lands were first flooded or the dates of any subsequent flooding. Nor had they alleged whether their lands had been continuously flooded since construction of the dam or whether the flooding was intermittent. Nor was it clear whether they contended that the construction of the dam or the operation of the dam's radial gate was the cause of their injury. Citing *Vette, Jones,* and *Starcevich,* the court pronounced this information necessary to determine whether the period for giving notice under section 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 8—102) had lapsed. The court held that the complaint contained insufficient information to ascertain the date of the injury and concluded that it was impossible to determine whether the notice of injury claimed to have been given by the plaintiffs had been given within the statutory period for notice pursuant to section 8—102. Because this information was lacking in the complaint, the trial court could not as a matter of law determine from the pleadings that the notice period had run. Upon remand, the court indicated, the necessary information could be provided.

The plaintiffs rely in part upon the recent case of *Urban v. Village of Inverness* (1988), 176 Ill. App. 3d 1, 9, 530 N.E.2d 976, 981, in which the plaintiffs sought injunctive relief and damages to a structure on their property caused by three incidents of flooding, in "1972," "1978," and "1979." The plaintiffs there maintained that the repeated flooding caused repeated injuries and that, therefore, the two-year statute of limitations of the Tort Immunity Act did not begin to run until the last day of the injury which occurred in 1979. The defendants argued that the statute of limitations had begun to run in 1972 when plaintiffs acquired knowledge of the flooding and damages and the existence of the cause of action. Plaintiffs had brought suit on April 18, 1980, alleging that the intermittent flooding was due to the defendants' negligence in maintaining crushed drain tile, which clogged the drain, and in dumping and grading dirt and landfill. The court determined that the plaintiffs were victims of "repeated injury" (176 Ill. App. 3d at 9, 530 N.E.2d at 981) and that the trial court had improperly restricted the rule that, where a tort involves repeated injury, the statute of limitations begins to run from the date of the last injury or

when the tortious acts cease, concluding:

"The last alleged flood damage was in 1979 and plaintiffs brought this action in 1980, within the two-year statute of limitations period. Plaintiffs' cause of action was not barred by the statute of limitations and the trial court erred in granting summary judgment for defendants on the ground that the action was barred." (176 Ill. App. 3d at 9, 530 N.E.2d at 981.)

The court did not, however, address expressly the episodes of flooding of either 1978 or 1972 with regard to the running of the statute of limitations.

The plaintiffs rely heavily on *Leckrone v. City of Salem* (1987), 152 Ill. App. 3d 126, 503 N.E.2d 1093, in support of their argument that their injury is "ongoing" and that no statute of limitations has yet begun to run. Plaintiffs in *Leckrone* argued that the complaint showed that the activity complained of was "ongoing" and that, accordingly, the two-year limitations period was not a bar. Some of the plaintiffs in *Leckrone* had sought damages arising out of the defendant's operation of a landfill and a sewage plant that allegedly permitted seepage to pollute a creek running through their land and serving as a water supply for their dairy operation and that such pollution was continuous. The plaintiffs here rely on the court's statement in *Leckrone* that, "[i]f the activity is in fact ongoing, the limitations period begins to run from the date of the last injury or the date when the tortious acts cease." (152 Ill. App. 3d at 137-38, 503 N.E.2d at 1101.) However, "seepage" from the operation of a landfill and sewage disposal plant is readily distinguishable from the allegations advanced here pertaining to the annual instances of flooding of the plaintiffs' croplands. Thus, we think that the plaintiffs' reliance on *Leckrone* is misplaced.

In the instant case, the plaintiffs' allegations make clear that the injuries complained of are the result of the defendants' improper operation of the Cahokia Canal and not the result of its construction or proper operation. In other words, the plaintiffs' allegations and contentions concerning the defendants' failure to inspect and to maintain the Canal, their failure to prevent the accumulation of silt and debris in it, and their failure to take adequate steps to prevent erosion along its banks reveal that the injuries alleged are not the necessary, immediate, and direct result of the construction of the canal but are, instead, the result of recurrent and intermittent overflows of their land, caused by negligent use or operation of the canal. Hence, the limitations period runs from the time of the last overflow, as opposed to the time of the completion of construction of the canal, for example, and only the damages caused by that overflow are compensable in any one suit. The

statute of limitation runs anew for damages caused in each instance of flooding. See *Kurtz v. County of Logan* (1987), 158 Ill. App. 3d 715, 511 N.E.2d 252.

With respect to the giving of notice of injury required by section 1—5 of the Metro-East Sanitary District Act of 1974, as opposed to section 8—102 of the Tort Immunity Act, the plaintiffs state in their brief that the time within which notice should be served on the defendant Metro-East Sanitary District is the "shorter six-month period prescribed by section 1—5 of the MESD (Ill. Rev. Stat. 1985, ch. 42, par. 501—5), rather than the longer one-year period formerly prescribed by section 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—102 [repealed as of November 25, 1986])." The defendants, likewise, take the position that the notice provision of section 1—5 of the Metro-East Sanitary District Act of 1974 governs the plaintiffs' cause of action.

■ With regard to the content of the notice required to be served on the defendant sanitary district, the plaintiffs state in their brief that "the content of the notice to be served on the defendant Metro-East Sanitary District is set forth by section 1—5 of the MESD Act (Ill. Rev. Stat. 1985, ch. 42, par. 501—5), rather than by section 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—102 [repealed as of November 25, 1986])." Since, as has already been indicated, the defendants assert that the notice provision of section 1—5 "completely governs" the plaintiffs' claim, there is no dispute between the parties as to what notice is required to have been provided to the defendants within six months after the occurrence of the damage or injury: namely, the name and residence address of the owner of the property damaged, its location, and the probable extent of the damage sustained. The parties dispute, however, whether the plaintiffs' filing of their complaint within the six-month period required by the Metro-East Sanitary District Act of 1974 satisfied the notice requirement of section 1—5.

Relying particularly upon *Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 356 N.E.2d 89, and *Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 472 N.E.2d 421, the plaintiffs maintain that the filing of their complaint within the six-month period specified by section 1—5 satisfied the notice requirement therein. In *Dunbar* the supreme court of Illinois held that the filing of a complaint within the notice period prescribed by section 8—102 of the Tort Immunity Act satisfies the statutory notice requirement. Section 8—102 provided that such notice give, as stated by the court in *Rio* (104 Ill. 2d at 361-62, 472 N.E.2d at 423), " 'in substance the following information: the name of the person to

whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any.' " In *Rio* (104 Ill. 2d at 367, 472 N.E.2d at 426), the court concluded that the complaint there provided the defendants with substantially all the information required by section 8—102 of the Tort Immunity Act, stating:

> "The obvious purpose of requiring the inclusion of a claimant's address in the notice is to provide the defendant with a means of contacting the claimant. The complaint here provided the name and address of plaintiff's attorney, who could be contacted with regard to the case. We deem this to be sufficient compliance with the Act. We also disagree with defendants' contention that the complaint did not sufficiently describe the general nature of plaintiff's injury. On the contrary, the complaint more than adequately described the gist of plaintiff's injury and its alleged cause."

As we have said, section 1—5 of the Metro-East Sanitary District Act of 1974 requires that the written notice give the name and residence address of the owner of the property damaged, its location, and the probable extent of the damage sustained. Here, as in *Rio*, the complaint included the names of the plaintiffs and the name and address of the plaintiffs' attorney. In their complaint the plaintiffs state that they either own or farm under lease all of the farms indicated on the diagram attached to and made a part of their complaint. They state further in their complaint that as a result of the flooding of the lands owned or farmed by them, their crops planted in 1981, 1982, and 1983 have been destroyed and that they have sustained damages in excess of $400,000. We deem this to be sufficient compliance with respect to the content of the notice required by section 1—5.

■ The defendants argue in their brief that under the authority of *Lane v. Chicago Housing Authority* (1986), 147 Ill. App. 3d 876, 498 N.E.2d 604, "it is not the date of filing which determines whether a complaint is filed within the notice period, but the date that the defendant is *served* with the complaint. In the present case, suit was filed on April 10, 1984[,] and served on the defendant on April 24, 1984." (Emphasis in original.) In *Lane* the plaintiff allegedly sustained an injury when he fell on the defendant's property on April 11, 1984. He filed his complaint in circuit court on April 8, 1985. The sheriff's return of service showed that the summons and complaint were served

on the defendant on April 12, 1985. The plaintiff in *Lane* had given the defendant no notice of the alleged injury during the one-year statutory period specified in section 8—102 of the Tort Immunity Act, and the court there held that, when the defendant has received no notice during the one-year statutory notice limitation period, the mere filing of a complaint not served upon a defendant within that period does not satisfy the notice requirement of section 8—102 of the Tort Immunity Act. The court in *Lane* noted particularly that in both *Dunbar* and *Rio* service of process had been effected within the applicable statutory notice period. In the instant case, however, the date of service of the summons and complaint cannot be known from the record provided to this court on review. Thus, we adopt the date used by the trial court. We conclude that the filing of the complaint by the plaintiffs within the six-month notice period specified by section 1—5 satisfied the notice requirement set forth therein.

In summary, we have determined that the statute of limitations here runs anew for damages caused in each instance of flooding from the time it occurs. In light of that conclusion, together with the parties' agreement that section 1—5 of the Metro-East Sanitary District Act of 1974 applies here and our conclusion that the filing of the complaint by the plaintiffs within the six-month notice period of that section satisfied the notice requirement set forth therein, we hold that the trial court properly barred the plaintiffs from seeking damages for that part of the alleged injury to their land occurring more than six months prior to the filing of their complaint in this cause on April 10, 1984.

■ The plaintiffs contend further that the trial court should have allowed their pleading to seek damages for the additional injury to their crops which has occurred during the pendency of this lawsuit on the ground that the amendment would relate back to the date on which the original complaint was filed and, thus, would not be barred by a lapse of time under any statute prescribing a period of limitations. Section 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(b)) provides:

"The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the

same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended."

Under this statute an amended pleading will not be deemed to relate back to the original pleading so as to avoid the impact of the statute of limitations rule unless the original and amended pleadings indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading. (*Bailey v. Petroff* (1988), 170 Ill. App. 3d 791, 525 N.E.2d 278.) In their brief the plaintiffs argue that

"[f]our years have passed since the filing of the original complaint, and, since that time, the same negligence on the part of the defendants has caused flooding of the plaintiffs' land, and damage to their crops, in the years 1984, 1985, 1986, and 1987. Because the injury which the plaintiffs have suffered, and are suffering, is a continuing one, and the same negligent acts or omissions of the defendants have caused its continuation, the continuation of that injury should be viewed as growing out of the same transaction or occurrence set up in the plaintiffs' original complaint."

In view of our determination that only the damages caused by a particular overflow are compensable in any one suit and that the statute of limitations runs anew for damages caused by each instance of flooding from the time it occurs, the plaintiffs' argument is not well taken. The plaintiffs' original and amended pleadings do not indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading and, therefore, cannot be deemed to relate back to the original pleading. Thus, the trial court did not err in refusing to permit the plaintiffs to amend their complaint to allege injuries to their property from overflows occurring after the filing of their complaint. To seek compensation for such injuries the plaintiffs would have to file a complaint for each cause of action so alleged within the appropriate limitations period.

The plaintiffs present for review the issue of whether either the Tort Immunity Act or the Metro-East Sanitary District Act of 1974

applies to causes of action for injunctive or other equitable relief. However, no action pertaining to the plaintiffs' count for equitable relief appears to have been taken by the trial court, and no question pertaining to this issue was identified by the trial court. Hence, we decline to consider it.

■■ Concerning the defendants' cross-appeal, they contend that the trial court ought to have granted their motion for summary judgment for several reasons, the first being that the defendants had no legal duty of care to maintain the Cahokia Canal "in a condition," as the plaintiffs urge, "sufficient to provide an outlet for the waters of such floods or freshets as men of ordinary prudence could have foreseen." A motion for summary judgment will be granted only if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Abernathy v. Dynell Springs Co.* (1989), 179 Ill. App. 3d 138, 534 N.E.2d 486.) The defendants take the position that when the defendant is, as it is, a municipal corporation, "and the plaintiff complains of an injury arising from that municipal corporation's supposed failure to perform its public function properly, the plaintiff must set forth facts in his complaint adequate to show that the municipal corporation owed him a *special duty* which was different from the general duty which it owed to the public at large." However, the cases cited by the defendants for this proposition have no application to the facts of this case but address, for example, the failure of the municipality to provide the plaintiff with adequate police protection or the failure of the municipality to enforce a certain provision of its housing code. The plaintiffs rely principally upon *Atherton v. East Side Levee & Sanitary District* (1918), 211 Ill. App. 55, 60-61, in which the court discussed the duty owed by the defendant sanitary district to the plaintiff landowner, seeking damages for the overflowing of her land when the defendant's levee and diversion canal interfered with the natural flow of the waters of Cahokia Creek and Indian Creek:

> "The contention that [the defendant] had the authority under the law to construct the levee and canal and thus change the course of Cahokia Creek is correct as a principle of law. It is as equally well established that while [the defendant] had this right it must have exercised that authority in such a manner as not to obstruct or retard the natural flow of the water, and not to throw or hold it back upon adjacent land to the damage of the same. 'It is settled by all the authorities that it is the right of

each proprietor of land upon a natural watercourse to insist that the water shall continue to run as it has been accustomed to do, and to insist that no one shall obstruct or change its course injuriously to him without being liable in damages.' (*Ohio & M. Ry. Co. v. Thillman,* 143 Ill. 127.) The law imposes upon any one interfering with the flow of the water in a stream to restore the stream to its former state or to so restore it as not to impair its usefulness. The same obligation rests upon a municipal corporation in this respect as rests upon an individual."

Noting that the evidence in the case tended to show that in times of overflow, prior to the building of the levee, a portion of the water from Cahokia Creek would run off in a certain direction, the court observed further:

"It was as much [the defendant's] duty to provide for this overflow water as the channel water of Cahokia Creek. The courts make no distinction, regarding [the defendant's] duty in this respect, between surface water, channel water and overflow or flood waters. \*\*\*

\*\*\* It is true that in constructing its levee and canal [defendant] was required to provide an outlet for only the waters of such floods or freshets as men of ordinary prudence could have foreseen." 211 Ill. App. at 62-63.

We find still instructive the remarks of the supreme court in *Bradbury v. Vandalia Levee & Drainage District* (1908), 236 Ill. 36, 41-42, 86 N.E. 163, 164, in answer to the question whether the defendant was liable for damages to the plaintiffs' lands as a consequence of the defendant's building a levee below them, thereby obstructing the natural flow of the Kaskaskia River in times of floods and freshets so that water backed up on the plaintiffs' lands:

"If an individual owner of the land where the levee was constructed had done the same acts as the defendant he would be liable for the consequent damage. He would have no right to build a levee which would prevent the escape of the flood waters and thereby flood the lands of the plaintiffs. In *Stout v. McAdams,* 2 Scam. 67, the court said: 'There can be no doubt that every flowing back or throwing water upon the land of another is such an act as entitles the individual injured to his action.' That case arose from the obstruction of a natural water-course by a dam, and the principle has been applied by this court alike to obstructions to the natural flow of surface waters and natural water-courses. \*\*\* [I]n *Gormley v. Sanford* [52 Ill. 158] it was held that there was no difference in principle whether the water

comes from the clouds above or has fallen upon remote hills and comes thence in a running stream. The court said (p. 162): '*** The right of the owner of the superior heritage to drainage is based simply on the principle that nature has ordained such drainage, and it is but plain and natural justice that the individual ownership arising from social laws should be held in accordance with pre-existing laws and arrangements of nature. As water must flow and some rule in regard to it must be established where land is held under the artificial titles created by human law, there can clearly be no other rule at once so equitable and so easy of application as that which enforces natural laws.' "

In view of the foregoing, we consider that the defendants' contention that the sanitary district as a municipal corporation owed no duty of care to the plaintiffs under the circumstances alleged to be without merit.

■ The defendants contend additionally that there is no genuine issue as to any material fact concerning their alleged breach of the standard of care. They argue that without the testimony of an expert, describing the standard of care and rendering an opinion about the defendants' breach thereof, the plaintiffs cannot establish an issue of fact concerning the defendants' alleged negligence. They state that the testimony on discovery deposition of the experts disclosed in this case shows that none has indicated either what the standard of care ought to be or that the defendants are in breach of it. In essence, defendants maintain that the testimony of an expert is necessary for the plaintiffs to establish a *prima facie* case. However, the cases defendants cite for this proposition do not support it. Expert evidence is admissible when the witnesses offered as experts have peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience an aid to the court or jury in determining the question at issue; expert testimony is proper when the subject matter of the inquiry is of such a nature that only persons of skill or experience in it are capable of forming a correct judgment as to any fact connected therewith. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 363.) We are unwilling to hold, as the defendants would have us do, that the instant case is one of such complexity that, as a matter of law, the plaintiffs cannot establish a *prima facie* case in the absence of expert testimony.

Similarly, the defendants maintain that there is no genuine issue as to any material fact concerning the "proximate causal connection" between the alleged breach of the standard of care and the damages claimed. They assert that "this type of factual causation can only be

proved by competent expert testimony." As before, we decline to hold that the instant case is one of such complexity that in the absence of expert testimony the plaintiffs cannot, as a matter of law, establish the requisite causal connection between the defendants' conduct and the damages they allege.

Finally, the defendants take the position that there is no genuine issue as to any material fact as to whether the plaintiffs suffered any legal damages. They argue that the only damages recoverable by the plaintiffs are those that occurred between October 10, 1983, and April 10, 1984. They state that the plaintiff, Gordon Gass, testified in his discovery deposition that these damages occurred as the result of the loss of a soybean crop planted in May of 1983 and flooded on July 5, 1983. "Ultimately," defendants state, "the crop was supposed to be harvested in September, 1983." Defendants argue, "No matter what date the court determines this 1983 'damage' accrued, either the time of planting (May, 1983), the time of the alleged flood (July 5, 1983), or the time of harvest (September, 1983), none of these dates occurs within the relevant period established by the court." However, the plaintiff testified at his discovery deposition that the harvest would have occurred in "September and October" of 1983. Therefore, the defendants' assertions with regard to damages are belied by the record. Under the defendants' own analysis a genuine issue exists as to a material fact pertaining to the plaintiffs' alleged damages, and the trial court properly denied the defendants' motion for summary judgment.

During the pendency of this appeal, the plaintiffs moved to dismiss the cross-appeal of the defendants and to strike portions of the defendants' brief. This motion was taken with the case and is hereby denied.

Affirmed.

HARRISON and RARICK, JJ., concur.