**SOO LINE RAILROAD COMPANY,**
Plaintiff,

v.

**TANG INDUSTRIES, INC.; Cometco Corporation and Cozzi Iron & Metal, Inc., Defendants.**

No. 97 C 0670.

United States District Court, N.D. Illinois, Eastern Division.

March 13, 1998.

(UTU Mot. Ex. 1 at 10).

892

Thomas L. Hogan, Thomas F. Tobin, Mary Lisa Sullivan Kamins, Connelly & Schroeder, Chicago, IL, Isley D. Colton, Leonard, Street and Deinard, St. Paul, MN, for Plaintiff.

Joel S. Feldman, Edward V. Walsh, III, Sachnoff & Weaver, Ltd., Chicago, IL, Thomas Vernon Skinner, Paul A. Duffy, Patrick F. Gordon, Jane DiRenzo Pigott, Winston & Strawn, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff Soo Line Railroad Company ("Soo Line") sues three entities who previously leased a portion of its railroad yard, Tang Industries, Inc. ("Tang"), Cometco Corporation ("Cometco") and Cozzi Iron & Metal, Inc. ("Cozzi"), for contribution and response costs recovery under the Comprehensive Environmental Response, Compensation and Liability Act of 1990 ("CERCLA"), as amended, 42 U.S.C. § 9601 et seq. (1990) and violations of state law. Defendant Tang moves to dismiss all portions of plaintiff's complaint concerning its liability.

### BACKGROUND

Plaintiff's allegations, accepted as true on a motion to dismiss, *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996), are as follows. Soo Line and its predecessors in interest have owned and operated a 120–acre railroad yard (the "railroad yard" or the "Site") located in Schiller Park, Illinois since the turn of the century. Prior to 1952, the 3.5 acre Site was generally unused by Soo Line. In 1952, however, Soo Line leased the railroad yard to Tang's predecessor in interest, Schiller Park Compressed Steel Corporation ("SPCS"). Soo Line and SPCS entered into six written lease agreements extending over a period of 30 years, which provided SPCS with exclusive leasehold rights to the Site and stated that the Site shall be continuously used as a scrap material storage yard. For approximately 30 years, SPCS operated a scrap yard on the Site.

On November 3, 1982, SPCS' tenancy ended when Cometco bought certain SPCS assets and SPCS assigned all its rights under its last effective lease agreement with Soo Line to Cometco. On the same date, Cometco and Soo Line entered into a written lease agreement, providing Cometco with exclusive rights to the Site. The Cometco lease also provides that Site should be used as a scrap material storage yard. Cometco operated a scrap yard on the Site for approximately five years. According to plaintiff, Cometco's operation of the Site resulted in at least one or more of the following substances being brought onto or generated at the Site: oil and hydraulic fluids, fuel oil, diesel fuel, gasoline, lubricants, hydraulic fluids containing PCBs, used batteries, scrap plastic and metal, toxic metal, paints, antifreeze and various solvents. Prior to the termination of the Cometco lease, on October 23, 1986, Soo Line requested that Cometco restore and clean the contaminated media caused by its scrap yard operations. Cometco responded that it would comply with Soo Line's demand. In February, 1987, Soo Line terminated the Cometco lease agreement.

Once Cometco vacated the Site in the Spring of 1987, Soo Line retained an environmental engineering firm to perform a preliminary Site contamination assessment of the railroad yard. The assessment showed that the Site was contaminated with hazardous substances and recommended that additional testing be performed and a work plan of remediation be undertaken at the Site. Plaintiff, in a letter dated July 8, 1987, demanded that Cometco indemnify Soo Line for the cost of the work to be done at the facility. By letter dated July 17, 1987, Cometco denied legal responsibility for the costs of the response action.

Plaintiff's amended complaint alleges that from 1987 to 1997, Soo Line paid out over $200,000 to environmental engineering firms for the performance of response action activi-

ties pursuant to and consistent with the Environmental Protection Agency's National Contingency Plan ("NCP") and other similarly related Illinois environmental protection guidelines and programs. The Site's groundwater and soils are contaminated with semivolatile and volatile organic compounds (polynuclear aromatic hydrocarbons, phthlates, benzene and xylenes, total petroleum), total petroleum hydrocarbons (such as gasoline and diesel fuel), PCBs, and heavy metals. Hazardous substances were also found on the properties adjacent to the Site.

On July 10, 1996, Soo Line sold the Site to the Regional Transportation Authority, d/b/a Metra Commuter Rail System ("Metra"). Prior to the sale of the railroad yard, Metra incurred response costs consistent with the NCP. As a condition of the sale, Soo Line was required to deposit $2,100,000 in an environmental escrow to compensate Metra for the costs incurred in removing the contaminants from the Site and other response activities. Soo Line alleges that it continues to incur costs associated with the cleanup of the Site.

In moving to dismiss, defendant Tang attacks virtually every aspect of plaintiff's amended complaint. For the foregoing reasons, defendant's motion is granted in part and denied in part.

## ANALYSIS

In ruling on Tang's motion to dismiss, the court adheres to the familiar standard of viewing the complaint in the light most favorable to plaintiff. Consequently, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Antonelli*, 81 F.3d at 1427; *Teague v. United States Postal Serv.*, No. 94 C 2152, 1997 WL 803869, at *2 (N.D.Ill. Dec. 29, 1997). The court will only dismiss a complaint for failure to state a claim if no relief may be granted under any set of facts that could be proven consistent with the allegations found in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### Potentially Responsible Party under CERCLA § 107

CERCLA creates two different causes of action by which parties can recoup costs associated with environmental cleanups. The first, § 107(a) provides a direct cost recovery action against potentially responsible parties ("PRPs"), or persons who are liable because they fall into one of four categories: (1) the owner or operator of the facility; (2) any person who owned or operated the facility at the time of disposal of any hazardous substance; (3) any person, who by contract, agreement, or otherwise, arranged for the disposal or treatment of hazardous substances owned or possessed by that person; and (4) any person who accepted any hazardous substances for transport to disposal or treatment facilities. CERCLA § 107(a), 42 U.S.C. §§ 9607(a)(1–4). Under § 107(a), PRPs are strictly and jointly and severally liable if there was a release or threat of a release of a hazardous substance at a facility and a person incurred necessary response costs consistent with the national contingency plan. *Id.* The other mechanism by which parties can recoup costs is § 113, which provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable." CERCLA § 113, 42 U.S.C. § 9613(f)(1).

In Count VI, plaintiff seeks relief against Tang pursuant to § 107(a) of CERCLA. Tang responds that plaintiff's § 107(a) claim fails as a matter of law because plaintiff, itself, is a potentially responsible party ("PRP"), and, therefore, cannot recover under § 107. According to Tang, plaintiff's only remedy is an action for contribution under § 113 of CERCLA.

Generally, parties who are themselves liable are barred from suing directly under § 107(a) *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994). Instead, when a potentially responsible party under CERCLA sues other PRPs, its claim is "a quintessential claim for contribution" under § 113 of CERCLA. *Id.* at 764; *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1240 (7th Cir. 1997) ("[W]hen two parties who both injured the property have a dispute about who pays

how much ... the statute directs them to § 113(f) and only to § 113(f).". A direct action for recovery of response costs is reserved only for innocent parties. *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120 (3rd Cir.1997); *See also United Tech. Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 100 (1st Cir.1994) ("[I]t is sensible to assume that Congress intended only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures.").

However, in *Akzo*, the Seventh Circuit hypothesized that an innocent PRP, such as a "landowner forced to clean up hazardous materials that a third party spilled onto its property" may maintain a cost recovery action under § 107(a). 30 F.3d at 764. *Rumpke* reiterated this exception, holding that "landowners who allege that they did not pollute the Site in any way may sue for direct response costs under § 107(a)." *Rumpke*, 107 F.3d at 1240. The *Rumpke* court stated that there are two possible outcomes from such an "innocent" landowner suit pursuant to § 107(a): (1) the facts will demonstrate that the landowner was truly "blameless"; or (2) the facts will reveal that the landowner was partially responsible, in which case, the landowner would not be eligible for recovery under § 107 and would proceed with its § 113 claim. *Id.*

Consequently, the key question is whether Soo Line is an "innocent landowner" so as to permit it to maintain a suit for direct response costs under § 107(a). Soo Line argues that it falls squarely within the *Akzo* exception. Soo Line contends that the allegations in the complaint, which provide that the Site was generally unused until it was leased to SPCS in 1952 and that it has remained vacant since Cometco's lease expired in 1987, demonstrate that Soo Line could not have polluted the Site. Comp. ¶¶ 9, 17.

Defendant, however, attempts to distinguish *Rumpke* from the present case. Tang argues that unlike the plaintiff in *Rumpke*, who purchased land, without any knowledge of its contamination, Soo Line must have known that the recycling scrap industry involved the potential for environmental pollu-

tion, and leased the yard knowing that it may be contaminated.

To begin, in *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342 (7th Cir.1997), the Seventh Circuit permitted a not-so-innocent landowner, who paid less for property, because it knew it was buying into an expensive cleanup, to proceed under § 107. The *Datacard* court stated that although the landowner was a "little less 'innocent' than the landowner described in *Akzo*," it still may proceed under § 107 for cleanup of contamination on its property due to a third party spill. *Id.* at 1346.

Furthermore, it is unclear from the allegations of the complaint, whether plaintiff knew that its tenants were disposing hazardous substances on its land, so as to make it ineligible for the innocent landowner exception. Contrary to defendant's argument, Soo Line's knowledge of the contamination cannot be inferred from the fact that Soo Line was aware that the land was being utilized as a scrap yard. Such a presumption relies on the overbroad assumption that every scrap yard operation emits hazardous substances into the environment. Consequently, plaintiff's knowledge of its tenants, emissions of hazardous substances on the land is an open question of fact, and, as such, inappropriate for resolution at this juncture.

Neither is the court persuaded by defendant's argument that the allegations of the complaint demonstrate that Soo Line "arranged for the disposal or treatment of hazardous substances" so as to subject itself to liability under § 107(a)(3). To find Soo Line liable under § 107(a)(3), the court must be able to "infer from all the circumstances that a transaction in fact involves an arrangement for the disposal [or treatment] of a hazardous substance." *Cadillac Fairview/California Inc., v. United States*, 41 F.3d 562, 563 (9th Cir.1994) (quotations omitted). The court does not see how plaintiff's allegations alone demonstrate that it "arranged" for the disposal of hazardous substances on the Site. *See C. Greene Equip. Corp. v. Electron Corp.*, 697 F.Supp. 983, 987 (N.D.Ill.1988) (for liability under § 9607(a)(3), defendant must affirmatively act to dispose of the waste in some manner).

Finally, defendant states that even if the innocent landowner exception is applied, plaintiff has not specifically alleged in the complaint that it never polluted the Site. Defendant correctly points out that the Seventh Circuit stated in *Rumpke* that it must be alleged in the complaint that plaintiff did not pollute the Site. *Rumpke*, 107 F.3d at 1241. Although plaintiff does state in its response that "Soo Line has not polluted the Site in any way and denies that it is in any way responsible for the actions of Tang or the other defendants who polluted the Site," these allegations are absent from the complaint. Pl.'s Resp. at 4. Since plaintiff cannot amend its complaint by way of its briefs, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), the court dismisses Count VI without prejudice. Plaintiff, however, is granted leave to amend its complaint to include the allegation that it did not pollute the Site.

The court concludes that, if plaintiff amends its complaint, it may proceed under § 107. However, as the case progresses, if the facts reveal that plaintiff was partially responsible for the pollution, its § 107 claim will be stricken, and it will have to proceed exclusively under § 113. *See Rumpke*, 107 F.3d at 1240.

### Response Costs

To establish a prima facie case under CERCLA, plaintiff must show that it has incurred "necessary response costs consistent with the national contingency plan." CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B). Defendant argues that plaintiff has run afoul of this requirement. Tang points out that plaintiff has only spent money to investigate the contamination of the Site and that these expenditures do not qualify as "necessary." Tang further maintains that plaintiff's complaint merely speculates that Soo Line will have to pay response costs in the future, but does not allege that plaintiff is currently paying for a clean-up. However, § 107(a)(2)(B) allows recovery of "costs of response," which includes the costs of "such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances." *See*

CERCLA §§ 101(23), 101(25), 42 U.S.C. §§ 9601(23), 9601(25). Therefore, contrary to defendant's argument, plaintiff's costs paid to consultants to evaluate the Site and develop a plan of remedial action constitute investigation and testing costs cognizable under CERCLA irrespective of whether plaintiff has incurred actual clean-up costs. *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir.1986) (holding that costs spent on investigation and testing are recoverable even where plaintiff has not incurred actual, on-site cleanup costs); *Cadillac Fairview/California*, 840 F.2d at 695 (costs of testing qualify as "response costs"); *American Nat'l Bank and Trust Co. v. Harcros Chemicals, Inc.*, No. 95 C 3750, 1997 WL 281295, at *9 (N.D.Ill. May 20, 1997).

Additionally, to make out a prima facie case, plaintiff must only allege one type of cognizable response costs under CERCLA. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1153 (9th Cir.1989). According to the liberal notice pleading requirements of the federal rules, plaintiff does not have to plead facts to show that the costs it incurred were necessary or that they are consistent with the NCP. *See* FRCP 8(a); *see also, G.J. Leasing Co. v. Union Elec. Co.*, 825 F.Supp. 1363, 1379 (S.D.Ill.1993) (holding that under CERCLA § 107(a)(4)(B), "plaintiff need not prove that their response costs were consistent with the NCP in order to make a prima facie case . . . (but) must make this connection at trial before damages may be recovered") Although to prevail at trial, plaintiff will have to show that the costs were "necessary" under CERCLA by demonstrating that they were incurred in response to a threat to human health or the environment, *G.J. Leasing*, 854 F.Supp. at 564, plaintiff does not have to do so in its complaint. In its amended complaint, plaintiff alleges that it has incurred and continues to incur "necessary" response costs "consistent with the NCP." Amend. Compl. ¶¶ 21, 24, 25, 65 and 69. These allegations are sufficient to state a claim under §§ 107 and 113 of CERCLA.

Finally, since the court has determined that plaintiff's allegations are sufficient to state a claim under CERCLA, it obviates the

need to consider defendant's derivative arguments regarding the dismissal of Count Eight, which seeks a declaratory judgment as to liability pursuant to CERCLA.

## State Law Claims

The court now turns to plaintiff's state law claims. Tang argues that all of plaintiff's state law claims are barred by the applicable statutes of limitations and, further, that each fails to state a claim. The court will consider each of plaintiff's state claims in turn.

### Counts I & II: Breach of Contract and Indemnification

■ Under Illinois law, plaintiff's breach of contract and indemnification claims are subject to the ten-year statute of limitations on written instruments. 735 ILCS § 5/13-206 (West 1982). Illinois follows the "discovery rule" to determine when a period of limitations begins. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 209 Ill.Dec. 684, 691, 651 N.E.2d 1132, 1139, (1995); *Vogt v. Bartelsmeyer*, 264 Ill.App.3d 165, 201 Ill.Dec. 753, 757, 636 N.E.2d 1185, 1189 (1994). Under the discovery rule, the cause of action accrues when plaintiff "became possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Vector–Springfield Properties, Ltd. v. Central Illinois Light Co.*, 108 F.3d 806, 809 (7th Cir.1997). Thus, the limitations period commences when plaintiff knew or should have known of the defective condition of the property and that it resulted from wrongful conduct. *G.J. Leasing*, 825 F.Supp. at 1369. Further, where only one conclusion can be drawn from undisputed facts, it is for the court to decide when the plaintiff knew or reasonably should have known about his injury. *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981).

■ This suit was filed on January 31, 1997. Defendant, however, argues that the amended complaint "flat out admits that plaintiff was aware of the conditions giving rise to its state law claims" more than ten years prior to this date. Def.'s Resp. at 9. On October 23, 1986, Soo Line sent a letter to Cometco requesting it to cleanup the "con-taminated media associated with and caused by the scrap yard operations" pursuant to its lease obligations. Compl., ¶ 15. The letter, which is attached to the complaint, and, therefore, can be considered on a motion to dismiss, *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431–32 (7th Cir. 1993), further notes "that these kinds of things attract the unfavorable attention of local, state, and federal government authorities." Defendant argues that this letter demonstrates that plaintiff had notice that the property was wrongfully polluted prior to January 31, 1987.

■ In its response, plaintiff does not dispute the fact that it was aware that the property was polluted when it wrote the letter to Cometco. Instead, plaintiff argues that Tang's dumping of toxic substances created continuous injury to its property, thereby postponing the commencement of the statutes of limitations. Where a tort involves continuing or repeated conduct, "the limitation period does not begin until the date of the last injury or when the tortious acts cease." *Johnson v. Tipton*, 103 Ill.App.3d 291, 59 Ill.Dec. 179, 188, 431 N.E.2d 464, 473 (1982). Thus, the issue is whether the continuing tort rule should be applied to toll the statute of limitations on plaintiff's claims.

■ A continuing tort "is occasioned by continuing unlawful acts and conduct." *Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill.App.3d 757, 158 Ill. Dec. 335, 338, 574 N.E.2d 129, 132 (1991). Illinois courts generally apply the continuing tort rule to nuisance and trespass cases. *See e.g., Meyers v. Kissner*, 149 Ill.2d 1, 171 Ill.Dec. 484, 594 N.E.2d 336 (1992) (uninterrupted flooding of downstream landowner by upstream landowner); *Gass v. Metro–East Sanitary District*, 186 Ill.App.3d 1077, 134 Ill.Dec. 722, 542 N.E.2d 1229 (1989) (recurrent flooding of plaintiff's land). However, a continuing tort is distinguished from a continuing injury, or "continuing ill effects from an initial violation." *Hyon Waste Management*, 574 N.E.2d at 132, 158 Ill.Dec. at 338. In the case of a continuing injury, plaintiff's cause of action accrues when the effects of the injury first become known to the property owner, notwithstanding the fact that these

effects are continuing. *Powell v. City of Danville*, 253 Ill.App.3d 667, 192 Ill.Dec. 675, 676, 625 N.E.2d 830, 831 (1993); *see also Austin v. House of Vision*, 243 N.E.2d 297, 101 Ill.App.2d 251, 255 (1968) ("where there is but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature" of the injury).

The case of *Powell v. City of Danville* is particularly instructive. In that case, the operator of a municipal landfill allegedly dumped toxic waste into a landfill. 625 N.E.2d 830, 192 Ill.Dec. 675. However, such tortious activity ceased when the landfill was returned to the municipality's control. *Id.* Since the tortious activity ceased on a specific date, the court did not apply the continuing tort theory. To do so, the court reasoned, would be "to confuse the concept of a continuing tort with that of a continuing injury." *Id.* 625 N.E.2d at 831, 192 Ill.Dec. at 670, 625 N.E.2d 823.

Similarly, plaintiff's allegations describe continuing injury, not a continuing pattern of tortious activity. Tang vacated the property when its lease ended on November 3, 1982. Consequently, although the effects from Tang's violations may be persisting, any tortious activities by Tang ended in 1982. Therefore, the continuing tort theory is inapplicable here, and the cause of action accrues when plaintiff knew or should have known of its injuries and that actionable conduct was involved. *Id.*

Applying the discovery rule, it is apparent that Soo Line was aware of its injuries and that they were wrongfully caused more than ten years ago. First, as previously mentioned, plaintiff does not dispute, in its response brief, that it was on notice that the property was polluted and that such pollution was wrongfully caused when it demanded that Cometco clean up the Site on October 2, 1986. The October 23 letter disclosed plaintiff's knowledge of pollution on the Site and that it was wrongfully caused.

The only reasonable inference that can be drawn from these facts is that plaintiff possessed enough information about its injury at this point, even if it did not actually know the extent of the contamination on the Site, to investigate whether there was actionable conduct involved and, thereby, trigger the limitations period. As the Illinois Supreme Court pointed out, "once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981); *see also Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (1982) ("At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."); *AXIA Inc. v. I.C. Harbour Constr. Co.*, 150 Ill.App.3d 645, 103 Ill.Dec. 801, 804, 501 N.E.2d 1339, 1342 (1986) (holding that the statute of limitations began to run when owner notified contractor of water leakage problem, indicating that it possessed requisite amount of information necessary to make further inquiry as to whether conduct was actionable). Therefore, plaintiff's breach of contract and indemnification claims are barred by the statute of limitations.

### Count IX: Negligence & Negligence Per Se

Plaintiff's negligence claim similarly runs afoul of the statute of limitations. Under Illinois law, actions to recover damage to real property must commence within five years from when the cause of action accrues. 735 ILCS § 5/13–205 (West 1982). Applying the discovery rule to determine when the cause of action accrued, it is clear that plaintiff knew of the injury to its property more than five years before filing suit. In fact, in 1987, Soo Line retained an engineering firm to analyze the contamination of the Site and demanded that Cometco indemnify it for the costs of the cleanup. Thus, Count IX of the Complaint is dismissed.

### Count X: Illinois Joint Contribution Tortfeaser Act

In Count X, plaintiff asserts a claim for contribution under the Illinois Joint Tortfeaser Contribution Act ("Contribution Act"), 740 ILCS 100/0.01 *et seq.* The right of contribu-

tion exists under the Act "where two or more persons are subject to liability in tort arising out of the same injury" and one tortfeasor "has paid more than his pro rata share of liability." *Id.* at § 100/2(a).

The court first turns to defendant's argument that plaintiff's contribution claim is barred by the statute of limitations. The statute of limitations for claims under the Contribution Act is two years. 735 ILCS § 5/13–204 (West 1996). Although the right of contribution arises in inchoate form at the time of plaintiff's injury, the cause of action accrues for purposes of the statute of limitations when payment is made or suit is brought. *Hahn v. Norfolk and Western Ry. Co.,* 241 Ill.App.3d 97, 181 Ill.Dec. 610, 613, 608 N.E.2d 683, 686 (1993); *Caballero v. Rockford Punch Press & Mfg. Co., Inc.,* 244 Ill.App.3d 333, 185 Ill.Dec. 228, 231, 614 N.E.2d 362, 365 (1993).

Here, the complaint alleges that Soo Line has made two different payments. First, from Spring, 1987 to August 10, 1996, Soo Line paid $200,000 to environmental engineering firms to perform response action activities. Compl. ¶ 21. Second, on August 10, 1996, Soo Line deposited $2.1 million in an environmental escrow for cleanup of the Site. Compl. ¶ 24. Since this action was commenced on January 31, 1997, the payments made by Soo Line after January 31, 1995 are not time-barred. Consequently, although some of the payments Soo Line has alleged in the complaint are stale, such as portions of the $200,000 paid to environmental engineering firms, Soo Line's payments to Metra survive. Thus, Soo Line's claim for contribution of payments made after January 31, 1995 is not barred by the statute of limitations.

Next, defendant argues that plaintiff's contribution claim is deficient because plaintiff fails to allege that it is jointly liable in tort. However, in Illinois, "there need not be actual tort liability in order to state a cause of action for contribution." *People v. Brockman,* 143 Ill.2d 351, 158 Ill. Dec. 513, 521, 574 N.E.2d 626, 634 (1991). In order for persons to be "subject to liability" under the Contribution Act, the party seeking contribution must "potentially [be] capable of being held liable in a court of law or equity." *Id.; see also Warner/Elektral/Atlantic Corp. v. County of DuPage,* 771 F.Supp. 911, 922–23 (N.D.Ill.1991) (only potential, not actual liability is required for claim under Contribution Act); *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382, 387 (1984) (even where defendant is immune from tort liability, potential tort liability is present for the purposes of the Contribution Act until that defense is established). Soo Line's ownership of the polluted Site creates the potential for liability in tort, and, thus, is the proper predicate for a contribution claim.

Defendant further contends that plaintiff's claim is barred by the Illinois economic loss doctrine enunciated in *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 84–85, 61 Ill.Dec. 746, 435 N.E.2d 443, 449–450 (1982). Under the *Moorman* doctrine, plaintiff may not recover in tort for pure economic losses, injury to person or property is required. In *Moorman,* the court defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* The doctrine is "premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations." *Ruscitti v. Atchison, Topeka, & Santa Fe Ry. Co.,* 987 F.Supp. 1039, 1042 (N.D.Ill.1997).

First, it does not appear that *Moorman* is applicable to the present case. Although the recovery of solely economic losses "due to defeated expectations of a commercial action" are precluded in a tort action, a tort action is proper when "harm above and beyond disappointed expectations" of a contract are shown. *City of Oakbrook Terrace v. Hinsdale Sanitary Dist.,* 172 Ill.App.3d 653, 122 Ill.Dec. 698, 702, 527 N.E.2d 70, 74 (1988). Viewing the allegations of the complaint in the light most favorable to plaintiff, the harm Soo Line has suffered is above and

beyond the expectations of its lease contract with Tang.

Moreover, the pleadings sufficiently allege damage to property to overcome the *Moorman* doctrine. Although it appears that the bulk of Soo Line's damages are in the nature of economic losses, the complaint does allege damage to the Site and properties adjacent to the railroad yard. In paragraph 22, Soo Line pleads that "[t]he [h]azardous [s]ubstances were also found in the soils and groundwater located on properties adjacent to the Site, with the Site as the probable and likely source." These allegations are sufficient to withstand a motion to dismiss. *See In re Chicago Flood Litigation*, No. 93 C 1214, 1993 WL 278553, at \*12 (N.D.Ill. July 20, 1993).

■ Finally, defendant urges the court to dismiss plaintiff's claim because plaintiff fails to allege costs in excess of its own equitable share of liability. In the complaint, Soo Line alleges that it has incurred response costs in excess of $2.5 million. Amend. Compl. ¶¶ 24, 32, 39. Further, Soo Line pleads that it has "advanced more than its equitable share" of the costs related to the cleanup. These allegations are sufficient to state a claim under the Contribution Act. *See Victory Memorial Hosp. Assoc. v. Schmidt, Garden & Erickson*, 158 Ill.App.3d 931, 110 Ill.Dec. 776, 778–780, 511 N.E.2d 953, 956–57 (party must allege and demonstrate at trial the specific dollar amount paid in excess of equitable share of joint liability to establish a right of contribution). Contrary to defendant's contentions, whether the amounts paid by plaintiff were necessary to satisfy its liability and whether plaintiff paid more than its fair share of the joint liability are questions to be decided by the trier of fact. Therefore, the court concludes that plaintiff's Contribution Act claim is sufficient to survive a motion to dismiss.

### CONCLUSION

In conclusion, defendant's motion to dismiss is granted in part and dismissed in part. Defendant's motion is denied as to Counts VII, VIII and X. Count VI is dismissed without prejudice. Plaintiff has until March 27, 1998 to amend Count VI. Counts I, II, and IX of the amended complaint are dismissed.

**IT IS SO ORDERED.**